GUILLERMO ATILES MORÉU, MANAGER OF THE STATE INSURANCE FUND, Petitioner, *v.* INDUSTRIAL COMMISSION OF PUERTO RICO, ETC., Respondent; ANDRÉS NEGRÓN RAMOS, Workman.

No. 394. Argued December 7, 1948.—Decided March 11, 1949.

 

*Ángel de Jesús Matos, M. Maldonado Pacheco* and *Aida Casañas Marengo,* for petitioner. The workman did not appear.

MR. JUSTICE TODD, JR., delivered the opinion of the Court.

The Manager of the State Insurance Fund asks us to review the decision rendered by the Industrial Commission in the case of Andrés Negrón Ramos, a workman. The conclusions of fact of the Commission are as follows:

"The workman is 43 years of age and has been employed since 1936 in the Cervecería Corona, as cooper helper, in charge of fastening, dismantling and pitching the barrels. Besides this work, and during 5 or 6 months each year, he also had to varnish the interior of the storage casks and tanks. These tanks measure 20 feet high by 10 deep, their only ventilation being a small door measuring 18 sq. inches near the bottom of the tank through which the painter goes in and out and in the upper part a tap hole which is left open while the painter is working inside the tank. This work begins with a general scraping of the walls to be coated.

"After the walls are scraped, a sort of 'stone shellac' is used which has to be dissolved by heat in a boiler within the same tank. After it is dissolved, the brush is introduced and impregnated with the hot shellac which is applied to the walls. This process causes clouds of smoke to be driven off within the tank, part of which escapes through the only two openings already described.

"Upon completing this operation, and after the shellac has dried, a 3-gallon gasoline lamp is used to smooth and polish the walls. In this as well as the preceding operation the worker perspires considerably for which reason he must go outside the tank almost every hour to get a breath of fresh air.

"In 1946 between September and December, when the worker had been so employed for about eight years he began to have a choking feeling and fatigue. When he went outside the tank to get fresh air he coughed but hardly gave it any importance and at times treated these spells with a drink of liquor. The symptoms, however, grew worse and near the end

of 1946 he had to be confined in the Municipal Hospital during the month of October where Dr. Marchand treated him, attributing his illness to the inhalation of dust and fumes in his employment.

"It was proved that this workman, prior to his accident, was suffering from a cold but the examinations of the Public Health Unit of the Department of Health, to which he was submitted every year by orders of his employer, as well as the two X-Ray photographs taken in the Municipal Hospital, revealed no illness, except on two occasions, one in September, 1947 [it should read 1946] when he was treated for asthma in the Municipal Hospital; that it was since October, 1947 [idem] when he actually felt the revival of his disease or asthmatic condition but did not notify the State Fund until December 4 because he thought that it was covered by the Act and then resorted at the first instance to the Municipal Hospital.

"It was further proved that another employee, Alejandro Matos, 58 years of age, who had been helping the injured workman for about a year and one-half in the same work, had to quit because he felt his heart affected and since then becomes tired easily. He does not know whether he has asthma or something else, and also that one of his reasons for retiring was that in doing his work he always had to be near a fire.

"It was established that the workman did not use any kind of mask or covering while doing his work inside the tank." (Brackets ours.)

After fully analyzing the medical testimony, the case was decided in favor of the workman as follows:

"There is no conflict in the medical testimony of both parties as to the disease affecting this workman, bronchial asthma, as well as its hereditary character and, therefore, this disease cannot be contracted except by inheritance. It is also true that, as the Manager alleges, our Workmen's Compensation Act does not include asthma as an occupational disease, but in our opinion the question for decision is whether due to the idiopathic condition of the workman, which in nowise affected his regular work as cooper helper, according to the employer's report to the Manager, (Exhibit 1–E) it could have been aggravated while he was employed for almost ten years and for a period of five or six months each year in the other additional job, that

is, to varnish the inside of the tanks where the beer, brewed by his employer, is stored for aging and we have already described how this work was carried on. . . .

"In what did this aggravation consist? We are inclined to accept as reasonably probable the theory announced by Dr. Vázquez Milán, especially if we take into account the scope and construction of our Workmen's Compensation Act in cases similar to this one, decided by our courts as well as by several courts in the United States, because there is no doubt that the fumes, gases, etc., that the employee inhaled over a long period of time while doing the work in the storage tanks, as indicated above, are factors allergenic to asthma which produced a constant irritability and which, starting with a cold and phlegm in the chest, culminated in a peculiar susceptibility of the workman to said fumes and gases. This accelerated the asthmatic attacks which did not become manifest until the end of last year, and developed to such a point that now it is no longer a latent case of asthma having no effect on his daily work, but an advanced condition of bronchial asthma which because of its constant and frequent spells inherent to this disease, disabled him to a large extent from performing any work to earn his living. Under these conditions we must conclude that the question of whether it is an occupational disease should not be taken into consideration, because in this case and in view of the evidence, it has been shown that an accident took place as the result of the work in which the claimant was employed in the employer's factory until the end of last year."

In support of its decision the Commission cited *Vogt* v. *Ford Motor Co.*, 138 S. W. 2d 684 and *Atiles, Mgr.* v. *Industrial Commission*, 66 P.R.R. 414. We issued the writ of review.

 The evidence submitted to the Commission was sufficient to show that the disease of the workman in this case was limited to a specific period of time—two or three weeks before being taken to the hospital—and that it was the immediate consequence of a series of trauma which the workman received in his bronchia by working under the unfavorable conditions he did because of the gases and fumes which were driven off by the melted varnish and which he inhaled while he worked.

Even though the expert physicians testified that bronchial asthma is a hereditary disease, one of them, Dr. Vázquez Milán, averred that "The asthma *per se* may have the hereditary factor but that allergy was contracted while working in a closed room and this is not hereditary." He maintained that it was the inhalation of the gases and the smoke that produced the asthmatic attacks of which the workman suffered and still suffers.

Accepting that the workman suffered from asthma, in an arrested condition, and also accepting that the work in which he was engaged was not the cause of the asthma, we have no doubt that said employment was the cause of the allergy contracted by the workman—to the smoke and fumes —which produced the acute asthma in the workman, disabling him from work. This was the conclusion of the Commission, which was based precisely on the testimony of Dr. Vázquez Milán. If, as stated in 1 Honnold on Workmen's Compensation, 286-8, ". . . there is in the word accident always an element of injury" and that ". . . if the injury were caused by disease, it is clear that the applicant could not recover," in the case at bar we have the element of injury—the series of trauma caused by the fumes and smoke in the workman's bronchia—and that injury was not caused by the disease—the hereditary latent asthma—but by the allergy which he contracted in his employment.

In order that an injury sustained by a workman, in the course of and as a consequence of his employment, resulting from accidents caused by any act or function inherent to his work, be compensable, it is not necessary that the impact or trauma be received at a particular time or in a single occurrence. And especially in cases of diseases contracted or aggravated due to employee's inhaling dust, fumes or gases.

In *Beaver* v. *Morrison–Knudsen Co.*, 41 P. 2d 605, (Idaho, 1935) it was held that disability resulting from revival of latent tuberculosis, due to employee inhaling silica dust during his employment, constituted an accident notwith-

standing inability to specify the particular day or month when injury was received. The facts were as follows: In 1928 when the employee started to work he was suffering from an arrested case of tuberculosis, but he was strong and healthy; in October 1931, he had "acute tuberculosis" in an advanced and incurable stage. The dust in which he worked and which he breathed for three or four months during each of the years 1928, 1929, 1930 and in February, 1931 contained 80 to 85 per cent silica. The court therefore presented this question: "Did the inhalation of silica dust precipitate or lighten up claimant's tuberculosis, and, if so, was it an accident?" After quoting the physician's testimony, the court reached the conclusion that it was an accident, citing authorities in support thereof. A rehearing was sought on the ground that in order to constitute an accident, it "must have arisen from an event capable of being identified with respect to time, place and circumstances." In deciding the question the court admitted that there was "apparent authority for the contention made by each side." However, after considering the evidence and citing authorities, it held that the workman suffered an accident in the course of his employment. It is significant that in said case the Industrial Accident Board had denied recovery but the court held that it had committed an error of law in applying the statute to the findings of fact. In the course of its opinion, the court said:

"We are not unmindful of the fact that the words 'injury' and 'accident' are not synonymous terms as used in the statute under consideration. The facts of this case require a recognition of the distinction in meaning of these two terms. In the circumstances confronting us here, it is not thought essential to a decision of the case that the court assert or attempt to decide just when and where the injury and result both merged into a consummated 'accident.' (Authorities) All accidents are preceded by a cause; in some cases that cause may have operated instantaneously, and in others it may have been operating for days, months, or years; and ultimately the 'accident' occurs. . ."

This same construction of the meaning and scope of the word accident, as used in Workmen's Compensation Acts, has been applied to cases where the workman suffered from asthma or the disease developed or aggravated by reason of his having inhaled dust, fumes or gases.

In *Vogt* v. *Ford Motor Co.*, 138 S. W. 2d 684 (Mo., 1940), cited by the Industrial Commission in the decision under review, it was held that asthma contracted by the workman while at work during four months from being exposed to and inhaling dust of paint used in the painting of automobiles constituted a compensable accident. A doctor testified in that case that "Vogt has allergic bronchial asthma; that the predisposition to have bronchial asthma has been inherent in him from childhood; that from the history of the case, working under the conditions employee did was, in his opinion, the cause of his having bronchial asthma. . ." The court, after rejecting the theory that the workman would have contracted the disease prior to his employment with the employer—because it was proved, as in the instant case, that he never had asthma before—or that it was an occupational disease—because asthma is not—reached the conclusion that the only question for decision was whether the bronchial asthma affecting the workman was the result of an accident and it held on page 687:

". . . His condition cannot be attributed to some cause disassociated with his employment, because even though allergic to contracting asthma, the sleeping allergy was never awakened until after he became so employed in January, 1935. It cannot be attributed to the occupation because it is not a disease which men in that occupation are subject to contract; it is not a disease known to be incidental to that particular employment. Then it is the result of accident or else we have a situation under the Workmen's Compensation Act where an employee contracts a disease out of and in the course of his employment, and, yet, not compensable. Such was not the intention of the lawmakers. We are told that an accident is 'an unexpected or unforeseen event happening suddenly and violently, with or

without human fault and producing at the time objective symptoms of an injury.' (Authorities) It was most certainly unexpected and unforeseen. Vogt could not have expected and foreseen that instilled in his physical makeup was a dormant allergy to the particular dust and fumes of this employment. We must always keep in mind that negligence has no place in the case, the happening may have been either with or without human fault. It follows that it came upon him unexpected and unforeseen; then, was it sudden and violent? Although the statutory definition of an accident terms it 'an event', we do not find that any court has ever construed the statute to mean a single occurrence; in other words, an accident may consist of an event, a single occurrence, or it may consist of an event, a series of occurrences resulting in an injury; and likewise it would be a narrow construction of the statute to say that 'sudden' means instantaneous."

After citing authorities the court held that since it was a question of fact whether the employee Vogt suffered an accident and it having been determined that he did, although the evidence was conflicting, the decision should be affirmed.

In *Murch–Jarvis Co.* v. *Townsend*, 193 S. W. 2d 310 (Ark., 1946) there was a conflict in the medical testimony as to whether the workman's employment—making an excavation in a zinc smelter—and exposure to the dust and fumes actually caused the bronchial trouble or aggravated a preexisting diseased condition. One of the doctors testified that the employee was suffering from "chronic sinusitis; chronic bronchitis; arterial hypertension and chronic vascular rephritis." Another doctor said that he had "bronchial asthma with associated bronchitis, hypertension and hypertensive heart disease." The Commission decided that the workman suffered an accidental injury by reason of inhalation of dust and fumes in the course of his employment, which injury aggravated a preexisting condition and resulted in total but temporary disablement. In the course of its opinion the Supreme Court, besides the case of *Vogt* v. *Ford Motor Co.*, supra, cited *Lea Mathew Shipping Corp.* v. *U. S. Employees Comp. Com. D. C.*, 56 F. 2d 860; *Dove* v.

*Alpena Hide & Leather Co.,* 164 N. W. 253; *Herron Lumber Co. v. Neal,* 172 S. W. 2d 252; *McGregor & Pickett v. Arrington,* 175 S. W. 2d 210; *Harding Glass Co. v. Albertson,* 187 S. W. 2d 961, and in affirming the decision of the Commission held that the workman had suffered an accident.

To that same effect it was held in *Batesville White Lime Co. et al., v. Bell,* 205 S. W. 2d 31, (Ark., 1947) that injury to a worker's heart by breathing excessive dust during 23 years' employment was accidental. The court said:

"Now there is nothing in the proof in this case to justify a conclusion that the injury to appellee's heart by breathing the excessive amount of dust was one which appellee might have reasonably expected or anticipated. Certainly it was accidental as far as he was concerned; *and there is much authority for a holding that an injury, not necessarily the result of one impact alone, but caused by a continuation of irritation upon some part of the body by foreign substances may properly be said to be accidental."* (Italics ours.)

Among others, said court cited *McNeely v. Carolina Asbestos Co.,* 174 S. E. 509, 512, where it was held that pulmonary asbestos produced by employee's inhalation of asbestos dust over a period of five months was an "injury by accident" and compensable. The court in that case said:

". . . Unless we attempt to whittle down or enlarge words or undertake to put big threads through the eyes of little needles, it would seem manifest that our act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it used the expression 'injury by accident' in its common-sense everyday conception as referring to an injury produced without the design or expectation of the workman."

In *Webb v. New Mexico Pub. Co. et al.,* 141 P. 2d 333 (N.M., 1943), an exhaustive study is made as to the question of "time" with relation to an "accident", under compensation statutes, where the workman was allergic to a type of soap the use of which over a period of six months

caused his hands certain injuries and it was held that it was an accident to receive said injury although it developed gradually and progressively during a period of several months. Among others, it quoted at length from *Vogt* v. *Ford Motor Co.* and *McNeely* v. *Carolina Asbestos Co., supra.*

The cases cited as well as this case, fall within the category of those where, preexisting an arrested disease, the workman should be entitled to compensation for all the consequences attributable to the injury or injuries which by reason of the accident accelerated, revived or aggravated the disease. In the case at bar, the workman had asthma in an arrested condition and the fumes and gases which he was compelled to breathe, caused a continued trauma in his bronchia, which constitutes the accident, since it was this allergy to the fumes and gases which accelerated the asthmatic attacks, aggravated his disease and disabled him from work.

The case of *Atiles* v. *Industrial Commission, supra,* and the quotation from Horovitz made therein, are applicable to this case. It is true that the quotation from Horovitz refers to specific diseases arising out of and in the course of the employment, but this is only one of the factors to be considered in cases of this nature. Said factors are whether an injury was caused by an accident and whether it arose out of and in the course of the employment.

As Horovitz states on page 93 of his work Horovitz on Workmen's Compensation:

". . . . . . . .

"Proving that a workman received a personal injury and by accident does not settle the question. He must in addition prove that it 'arose out of and in the course of the employment.' "

Formerly the same author had already said on page 91:

". . . . . . . .

"Even diseases may be accidental injuries, although sometimes they are said to arise accidentally from injuries."

And on page 92:

"... . . . . . . .

"While 'suddenness' of onset is usually requisite, a delay of hours, days, or even months is not necessarily fatal, e.g., pneumonia from cold draughts, or a subacute rheumatism from bailing water, nor a longer delay *if due to a series of traumas or scratches,* . . ."

And in the footnotes he cites *Webb v. New Mexico Pub. Co. et al., supra.*

■ There are many identical or similar cases decided in favor of workmen under the liberal construction of these compensation statutes which should prevail. See annotations in 6 A.L.R. 1466; 23 A.L.R. 335; 62 A.L.R. 1460; 90 A.L.R. 619 and 97 A.L.R. 1412. And particularly it should be so when, as in the present case, the expert testimony warrants the conclusion of the Industrial Commission in deciding for the workman.

The decision of the Commission should be affirmed.

MR. JUSTICE SNYDER with whom MR. JUSTICE MARRERO concurs, dissenting.

I am unable to agree with the majority opinion. I concede *arguendo* that the asthma of the workman was aggravated over a period of time by the conditions under which he worked. His illness was therefore caused by his work. But our Act does not make compensable every illness resulting from the work of the employee. Our Act provides for compensation only if in the course of his employment he was either injured in an *accident* or contracted one of the occupational diseases listed in the Act.

The difficulty in this case stems from the fact that the Legislature has not made asthma an occupational disease. The majority opinion gets around this difficulty by finding that an "accident" occurred in this case. In doing so, they have given that word a meaning that I have never before attributed to it. The net effect is that we now have a new

occupational disease—asthma—written into our statute by this Court.

I do not hazard a guess as to where the court will draw the line in future cases. To me the *rationale* of this case compels us to hold in future cases that all diseases traceable to the work of the employer are compensable on the theory of "an accident", despite the fact that they are not included in the list of occupational diseases established by the Legislature.

Under the guise of liberal interpretation, this Court has converted our statute, which is entitled "Workmen's *Accident* Compensation Act", into a health and life insurance statute. I believe in that kind of insurance. I wish every workman in Puerto Rico were covered by such insurance. But we have no right to invade the function of the Legislature and to provide for health insurance when the Legislature has seen fit to provide only for accident insurance.

We all have some humanitarian instincts, although perhaps in varying degrees. I would like to yield to my sympathy for this workman who contracted asthma as a result of his employment. But the Legislature has not provided for his case. Nor has the State Fund collected premiums from employers for this type of coverage. For all I know we may be opening the door to a flood of cases based on this or a similar theory. If the Fund is to avoid bankruptcy, it must raise its premiums to administer an Act which has been metamorphosed by judicial fiat. In the end the community as a whole through increased premiums will pay for the broadening by this Court of our Act to include, under the theory of accident, occupational diseases not listed in our Act. I do not object to this result. But I find nothing in the statute on which it could be properly based. Cf. *Quintero* v. *Industrial Commission*, 67 P.R.R. 902.

I always find it profitable to read cases from other jurisdictions. But some of the cases on this point were decided under statutes which only require "injury" to the workman

598

rather than an "accident". Horovitz on Workman's Compensation, p. 84 *et seq.* And others are in agreement with my view. See, for example, *Gabbard* v. *Proctor & Gamble Defense Corporation*, 201 S. W. 2d 651 (Tenn., 1947). On final analysis, the important thing for us is not what other courts have said, but what the Legislature of Puerto Rico, with local conditions in mind, meant by the language it used.

This Court fell into a similar error in *Atiles* v. *Industrial Comm.*, 66 P.R.R. 744, in which I did not participate. That case should therefore be reversed.[1]

I would reverse the order of the Industrial Commission and enter a judgment dismissing the petition of the workman.

---

[1] The quotation from Horovitz, *supra*, pp. 147–8, in the *Atiles* case relates only to the question of the causal relation between the disease and the work of the employee. It does not support the result reached in the *Atiles* case; namely, that inhaling dust over a period of time constitutes an "accident".