CABELL McNEELY v. CAROLINA ASBESTOS COMPANY.

(Filed 23 May, 1934.)

**1. Master and Servant F b—Definition of "occupational disease."**

An occupational disease, which is outside the scope of the Workmen's Compensation Act, is a disease which is incidental to the employment and foreseeable as an ordinary and natural result thereof, and pulmonary asbestosis caused by the inhalation of dust for a period of five months by an employee of an asbestos factory, which is directly attributable to the active negligence of the employer in failing to provide a dusting or

suction system such as is ordinarily provided in such factories for the safety of employees, *is held* not an occupational disease, the disease being attributable to the active negligence of the employer in failing to provide a reasonably safe place to work, and not being a usual incident of the employment since it does not result to employees in such occupations when due care for their safety is exercised by their employers.

**2. Same—Injury by accident is one produced without design or expectation of the workman.**

While the Compensation Act covers only injuries to employees by accident arising out of and in the course of their employment, the word "accident" will be construed in its wide and practical sense to give effect to the intent of the act, and an injury produced by inhaling asbestos dust for a period of five months is an accidental injury within the terms of the Compensation Act when such injury is not foreseen or expected and is attributable to the active negligence of the employer in failing to provide proper dusting or suction systems ordinarily provided in such work, the test being not the amount of time taken to produce the injury but whether it was produced by unexpected and unforeseen, and therefore, accidental means.

**3. Master and Servant F a—Held: plaintiff's remedy was under Compensation Act, and nonsuit was properly granted in action at common law.**

The allegations and evidence in this action for damages at common law are held to show that the injury in suit was caused by an accident arising out of and in the course of plaintiff's employment, and plaintiff and defendant employer being bound by the provisions of the Workmen's Compensation Act, defendant's motion as of nonsuit was properly granted, plaintiff's remedy under the Compensation Act being exclusive of all other remedies. N. C. Code, 8081(r).

CLARKSON, J., dissenting.

CIVIL ACTION, before *Sink, J.,* at October Term, 1933, of MECKLENBURG.

This is a common-law action for damages. Plaintiff alleged that he was employed by the defendant as a spinner and worked from December, 1929, until March, 1931. He further alleged that the room in which he worked, was improperly ventilated, and that the atmosphere therein was impregnated with fine asbestos dust, and that such dust was permitted to accumulate by reason of the negligent failure of defendant to provide a dust system or suction system, or to take any other precaution for the protection of the health of an employee, and that by reason of such negligence the inhalation of such dust impaired and destroyed his health, resulting in pulmonary asbestosis. He further alleged that such injuries were proximately caused by the negligence of defendant to furnish a safe place to work or to warn and instruct as to the hazards of breathing asbestos dust, etc.

The defendant denied the allegation of negligence and asserted that both the plaintiff and the defendant "were operating under the North Carolina Workmen's Compensation Act, and that the rights and remedies conferred by said act . . . are exclusive of all other rights and remedies." The defendant further pleaded contributory negligence, assumption of risk, and the statute of limitations.

The evidence for plaintiff tended to show that he had been working for the defendant for about fifteen months, and that his duties required him to work in a room filled with asbestos dust and which was poorly ventilated. There was further evidence that other asbestos plants had suction or dusting systems to prevent injury to employees. The plaintiff testified that he had worked at one asbestos plant in Charlotte for about eleven years, and that "when he entered the employment of the Carolina Asbestos Company the condition of my health was good. I did not quit work then, but worked until I gave out. . . . At the time I quit I was not able to work. . . . I felt like my chest had thirty or forty pounds of weight on it. I did not want to move. . . . I got to coughing so bad in the mornings when I would get up that I would cough anywhere from fifteen to thirty minutes. . . . The first ten months I worked for the Carolina Asbestos Company I never lost a day. The plant ran so many different grades of asbestos during the time I worked there I really don't know the names of the grades. . . . When I threw it in the machine smoke would fly from the dust. . . . A lot of times it got so dusty it would settle on the electric bulbs."

A physician examined as a witness for plaintiff, testified that plaintiff was suffering with pulmonary asbestosis.

At the conclusion of the evidence for the plaintiff, the trial judge sustained a motion of nonsuit and the plaintiff appealed.

*B. S. Whiting and J. L. DeLaney for plaintiff.*
*John M. Robinson and Hunter M. Jones for defendant.*

BROGDEN, J. (1) Is pulmonary asbestosis produced by the inhalation of asbestos dust by an employee during a period of five or six months an "injury by accident arising out of and in the course of the employment," within the purview of the North Carolina Workmen's Compensation Law?

(2) Can such employee, so injured, maintain a civil action for damages, upon allegation and proof that such injury was produced by the negligence of the employer?

Both parties to the controversy are presumed to have accepted the North Carolina Workmen's Compensation Act and consequently bound

by its terms. Moreover, the evidence disclosed that at all times the defendant had in its employ more than five employees, so that the jurisdictional question is not involved. C. S., 8081(k).

C. S., 8081(l), provides that "injury and personal injury shall mean only injury by accident arising out of and in the course of the employment and shall not include a disease in any form, except where it results naturally and unavoidably from the accident."

C. S., 8081(r), provides that "the rights and remedies herein granted to an employee where he and his employer have accepted the provisions of this chapter respectively to pay and accept compensation on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representatives, parents, dependents or next of kin, as against employer at common law or otherwise, on account of such injury, loss of service or death," etc.

The evidence tended to show that the plaintiff entered the employment of the defendant about December, 1930, and stopped work on account of disability in March, 1932, which constitutes a period of approximately fifteen months. The plaintiff testified: "I did not have any trouble of this kind prior to the time I went to work for the Carolina Asbestos Company. The first ten months I worked there I never lost a day." Consequently, the "injury" asserted by the plaintiff began and progressively produced disability within a period of approximately five months. Plaintiff said: "I never paid so much attention to it until the belt came off the machine I was operating one day and I went up on the ladder and tried to put it back, and I almost fainted up on the ladder. I came down off the ladder and sat down a few minutes until I got over it and went and told the boys to have the belt put on for me."

Upon the foregoing facts and pertinent provisions of the compensation law the plaintiff contends that he is suffering from what is generally denominated in compensation cases, "an occupational disease," and that such disease is not compensable, and, therefore, his sole remedy consists in a common-law action for damages. The legal basis for the contention is that the Compensation Act applies to "injury by accident arising out of and in the course of the employment," and as an occupational disease develops slowly and progressively, such cannot be deemed to be an "injury by accident."

The defendant contended that the injury to plaintiff was either compensable, or, if not compensable, he was precluded from bringing a common-law action for damages by virtue of C. S., 8081(r), *supra,* and therefore in either event was not entitled to recover.

The term "occupational disease" has been variously defined and interpreted in judicial decisions and text-books. Schneider in Workman's

Compensation Law, Vol. 1 (2 ed.), p. 644, said: "A disease contracted in the usual and ordinary course of events, which from the common experience of humanity is known to be incidental to a particular employment, is an occupational disease, and not within the contemplation of the Workmen's Compensation Law." Elaboration of the definition is found in *Gay v. Hocking Coal Co.*, 169 N. W., 360. The Court said: "An 'occupational disease' suffered by a servant or employe, if it means anything as distinguished from a disease caused or superinduced by an actionable wrong or injury, is neither more nor less than a disease which is the usual incident or result of the particular employment in which the workman is engaged, as distinguished from one which is caused or brought about by the employer's failure in his duty to furnish him a safe place to work. If the employer fails to provide a reasonably safe place to work, or fails to observe the specific requirements of the statute with respect thereto, and as a result of such neglect the employe is injured, the liability of such employer cannot be avoided by calling such injury an 'occupational disease,' or by showing that disease of that nature is often the accompaniment or result of such employment, even when all due care has been exercised by the employer."

These definitions have been widely quoted and have been generally accepted by courts and textwriters as correct. Assuming their correctness and applying them to the facts in the case at bar, it is obvious that the plaintiff was not injured by means of an "occupational disease." The plaintiff testified that he had worked at an asbestos plant in Charlotte for about eleven years prior to his employment with the defendant without suffering any ill effects from the work. He alleged in his complaint and offered evidence tending to show that his injury was produced and proximately caused by the negligence of defendant in that it maintained no dusting or suction system such as was approved and in general use in other asbestos plants. Consequently, his allegation and proof both established the fact that his injury was caused by the negligence of the employer, and hence was not "the usual incident or result of the particular employment in which the workman is engaged." That is to say, the injury was not produced by the inherent nature of the work itself and classifiable as an occupational disease, but was produced by the active negligence of the employer and his failure to exercise reasonable care.

However, the plaintiff further asserts that his injury was produced gradually and progressively through a period of five months, and hence was not an "injury by accident arising out of and in the course of the employment," and that the compensation statute covers only such accidental injuries, and, therefore, as the injury complained of is not accidental, he is entitled to maintain a common-law action for damages

as the sole remedy open to him. The inquiry then shifts to the question as to whether the injury was accidental within the meaning of the Compensation Act, and hence compensable. The term "accident" was defined by this Court in *Conrad v. Foundry Co.*, 198 N. C., 723. The Court said: "The word 'accident,' as used here, has been defined as an unlooked for and untoward event which is not expected or designed by the person who suffers the injury." The Court further said: "In construing the word 'accident' as used in the Compensation Act we must remember that we are not administering the law of negligence. Under that law an employee can recover damages only when the injury is attributable to the employer's want of due care; but the act under consideration contains elements of a mutual concession between the employer and the employee by which the question of negligence is eliminated. Both had suffered under the old system, the employer by heavy judgments, . . . the employee through old defenses or exhaustion in wasteful litigation. Both wanted peace. The master in exchange for limited liability was willing to pay on some claims in the future where in the past there had been no liability at all. The servant was willing not only to give up trial by jury, but to accept far less than he had often won in court, provided he was sure to get the small sum without having to fight for it." Consequently, it is obvious that the word must not be used in its restricted and technical sense, but in a wider and practical sense necessary to give workable effect to the proper and just administration of the compensation law. Variable definitions have been given by the courts to the words "injury by accident," "accidental injury," etc., and the applications of such definitions to given cases or states of fact have resulted in a divergence of concept and interpretation which cannot be harmonized or brought into unison. Indeed, a study of a host of cases produces the conclusion that the lines of interpretation must be treated as parallel. In note 90 of the Workmen's Compensation Law, *supra,* page 643, dozens of cases are assembled. See, also, 62 A. L. R., 1458, and annotation; 19 A. L. R., 112; 23 A. L. R., 335; 6 A. L. R., 1466; 29 A. L. R., 691.

Well reasoned cases proceeding upon opposite theories are *Jones v. Rinehart & Dennis Co.,* 168 S. E., 482; *Victory Sparkler & Specialty Co. v. Francks,* 128 Atlantic, 635, and *Sullivan v. Ins. Co.,* 164 N. E., 457. The West Virginia Court in the *Jones case, supra,* held that a disease contracted by an employee was not compensable unless directly attributable to a definite, isolated and fortuitous occurrence, and that in such cases the injured party could maintain a common-law action for damages irrespective of the Workmen's Compensation Act. The Maryland Court in *Victory Sparkler case, supra,* said: "In this case, the occupation of the girl as an employee in a department of a manufac-

tory of fireworks was simply a condition of her injury, whose cause was the definite negligence charged against the employer. The most that is warranted to be inferred from the allegations of fact in the declaration is that the phosphorus poisoning alleged was the gradual result of the negligence of the employer. As this negligence was a breach of duty to her, it was not to be foreseen or expected by the worker as something which would occur in the course of her employment. The fact that she continued at her place of labor, in the doing of her common and regular task, makes it clear that the phosphorus poisoning happened without her design or expectation, and so her injury was accidental. . . . It was by chance that employer did not use due care, and by chance that the vapor of phosphorus was where its noxious foreign particles could be inhaled by the girl. It was by chance that the inspired air carried these particles into her system, sickening her, and causing a necrosis of the jaw after fortuitously finding a lesion. The injury thus inflicted upon her body was accidental by every test of the word, and its accidental nature is not lost by calling the consequential results a disease. Nor can the fundamentally accidental nature of the injury be altered by the consideration that the infection was gradual throughout an indefinite period, as this simply implies a slow development of the malady, or that, instead of a single accidental injury, there was a succession or series of accidental injuries culminating in the same consequential results."

It seems to be generally conceded that, if an employee should suddenly inhale a volume of air laden with poison or other destructive agencies, producing injury immediately or within a short period of time, such injury would be deemed to be accidental or "injury by accident," but it does not seem that the time element should be paramount or controlling. *Cabe v. Parker-Graham-Sexton, Inc.*, 202 N. C., 176. If so, the courts are forced into the field of speculation in an effort to determine what is a reasonable time or what standard of time shall be adopted in determining the rights of the parties. Moreover, it would not seem that the unexpected, unforeseen, and, therefore, accidental inhalation of deleterious matter could be deprived of its accidental quality by the mere consideration of whether it took five days or five months to produce the same result.

An examination of the Workmen's Compensation Act of North Carolina discloses many uses of the expression "injured employee" without the qualifying words "accident" or "by accident." So that, unless we attempt to whittle down or enlarge words or undertake to put big threads through the eyes of little needles, it would seem manifest that our act did not undertake to limit compensation to cases where the injury was begun and completed within narrow limits of time, but that it

used the expression "injury by accident" in its common sense every-day conception as referring to an injury produced without the design or expectation of the workman. Indeed, section 13 of the act declares: "No compensation shall be payable if the injury or death was occasioned by the intoxication of the employee or by the wilful intention of the employee to injure or kill himself or another." Manifestly, all other accidental injuries, not specifically withdrawn from the benefits of the act, should be logically deemed to fall within its purview.

Upon a consideration of the whole subject, we are of the opinion that the injury alleged in the complaint was compensable, and that the ruling of the trial judge was correct.

Affirmed.

