(No. 31979.—

CANADIAN RADIUM & URANIUM CORPORATION, Appellant, *vs.* INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellee.

*Opinion filed January 24, 1952—Rehearing denied March 17, 1952.*

HINSHAW & CULBERTSON, of Chicago, (OSWELL G. TREADWAY, of counsel,) for appellant.

VOGEL & BUNGE, of Chicago, for appellee.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

Canadian Radium & Uranium Corporation filed its complaint in the superior court of Cook County, seeking to recover from Indemnity Insurance Company of North America upon a comprehensive general liability insurance policy. Defendant's motion for judgment upon plaintiff's complaint was allowed, and judgment entered for defendant and against plaintiff. The Appellate Court has affirmed, (*Canadian Radium and Uranium Corp.* v. *Indemnity Ins. Co. of North America,* 342 Ill. App. 456,) and granted a certificate of importance allowing a further appeal to this court.

The material facts, alleged in the complaint, and admitted by defendant's motion, are as follows: Under an agreement made as of June 1, 1944, plaintiff, which had developed and perfected a process for producing radon ointment and had patented certain necessary equipment for use in the process, granted Radium Industries, Inc., a license to produce and distribute the ointment. Plaintiff agreed to deliver to Radium Industries, Inc., a sufficient amount of radium in solution for the production of the ointment, together with an emanator and other necessary equipment and supplies, title to all of which was to remain in plaintiff. The licensee corporation agreed to furnish and maintain suitable space, to supply labor for the production and distribution of the ointment, to invoice purchasers at prices

and upon terms determined by plaintiff, and to assume responsibility for collection of the invoices.

On June 20, 1945, Radium Industries, Inc., employed as a laboratory technician, Mary Moore, whose duties required her to operate the emanators and other equipment and devices used in producing radon ointment. She claimed to have sustained bodily injuries as the result of the radioactivity of the radium, its compounds and decay products, and the manner in which she was required to handle them in the production of the ointment. On November 8, 1945, Mary Moore filed a complaint in a United States District Court against the present plaintiff, Canadian Radium & Uranium Corporation, alleging that under its contract with Radium Industries, Inc., the present plaintiff furnished the equipment and materials for the manufacture by the former company of radon ointment; that during a period of approximately seven months, ending on or about June 20, 1945, she was employed by Radium Industries, Inc., working in and about the manufacture of the ointment; that in performing her duties she came in close proximity to radium and radioactive substances, thereby being exposed to the hazard of having her tissues deleteriously affected by the radioactive emanations from these materials; and that in consequence of continued exposure, her hands and other parts of her body were affected by the radioactive emanations and became diseased and afflicted with radium poisoning. Mary Moore alleged that the present plaintiff, the owner of the radium, had, by its negligent and wrongful conduct, caused her to sustain damages and bodily harm in negligently and carelessly failing to warn her of the dangerous character of the radium; negligently and carelessly providing plans and methods of doing the work which involved her undue exposure to the radioactive emanations, and negligently furnishing defective emanators and other equipment which resulted in her exposure to a dangerously excessive amount of radioactive emanations.

She also alleged due care on her part, and a lack of knowledge of the risk incident to the handling of radium and radioactive substances. Damages in the amount of $200,000 were asked.

The defendant insurance company had issued to plaintiff its comprehensive general liability policy, under which it agreed to pay on behalf of plaintiff all sums which the latter should become obligated to pay by reason of the liability imposed upon it by law for damages "because of bodily injury, sickness or disease, * * * sustained by any person or persons and caused by accident," and to defend in plaintiff's name and behalf any suit against it alleging such injury, sickness or disease, and seeking damages on account thereof "even if such suit is groundless, false or fraudulent." The policy provided that "Upon the occurrence of an accident written notice shall be given * * * to the *company* as soon as practicable," the notice to contain "reasonably obtainable information respecting the time, place and circumstances of the accident, the name and addresses of the injured and of available witnesses." Bodily injury liability was limited to "$200,000 each accident." The policy applied to accidents occurring during the period from February 3, 1945, to February 3, 1946.

Upon being advised of the claim of Mary Moore, plaintiff gave defendant insurance company immediate notice thereof, as required by the policy, forwarded to defendant the summons and complaint served upon it, and demanded that the insurer defend the action in the name and on behalf of the insured. The insurance company refused to defend the action, and denied liability, asserting that there was no coverage under the policy because the injury claimed by Mary Moore did not arise out of an accident. The insured thereupon proceeded with its own defense, and shortly before the trial date succeeded in settling Mary Moore's claim for $2500. In the course of its defense it had been obliged to pay out other sums for attorneys' fees,

investigations, depositions, physical examinations of Mary Moore, advice and services of scientists trained in handling radioactive substances, and arranging for witnesses to be present at the trial. The expenses, together with the sum paid in settling the suit, totaled $6963.96. The insured thereafter filed the present complaint against the insurance company for breach of the defense provisions of the policy, alleging that the liability asserted and the damages sued for by Mary Moore were for bodily injury, sickness or disease caused by accident and within the coverage of the policy, and that the former action was such as defendant had obligated itself to defend on behalf of the insured. Plaintiff asked judgment for $6963.96, together with interest thereon, its reasonable attorneys' fees as a part of its taxable costs, and in addition thereto, the sum of $500 by reason of vexatious delay, as provided for by statute. Ill. Rev. Stat. 1951, chap. 73, par. 767.

Defendant's motion for judgment was made upon two grounds: (1) that the claim of Mary Moore involved an occupational disease and was not for bodily injury, sickness or disease caused by accident, within the contemplation of the insurance policy, and (2) that her alleged disability arose out of the handling and use of goods and products sold or handled by plaintiff after it had relinquished possession thereof to Radium Industries, Inc., and that liability on account of such a claim was excluded by a "Products Exclusion Endorsement" attached to and forming a part of the policy. This endorsement reads: "It is hereby understood and agreed that the policy to which this endorsement is attached does not cover claims for damages on account of bodily injuries or death resulting therefrom, arising out of the handling or use of or the existence of any condition in goods or products sold or handled by the *insured,* after the *insured* has relinquished possession thereof to others, anything contained in the printed conditions of this policy to the contrary notwithstanding."

The motion was sustained by the trial court without specification as to either ground of the motion. Accordingly, the plaintiff in its appeal to the Appellate Court assigned as error the trial court's acceptance of both grounds. The Appellate Court, however, sustained the judgment of the trial court solely upon the ground that Mary Moore's disability was not "caused by accident." It explicitly stated that consideration of the defense under the "Products Exclusion Endorsement" was unnecessary. This appeal then followed upon a certificate of importance granted by the Appellate Court.

The first question presented is whether the word "accident," as used in the general liability insurance contract, is limited in meaning to a single event referable to a definite time and place; or whether sickness or disease which results from a series of exposures, none of which is sufficient in itself to cause injury, but which when aggregated over a sufficient length of time culminate in an injurious result, may be said to be caused by accident within the meaning of the insurance contract.

This court has considered the meaning of the word "accident" as used in the Workmen's Compensation Act. (*Peru Plow and Wheel Co.* v. *Industrial Com.* 311 Ill. 216; *Labanoski* v. *Hoyt Metal Co.* 292 Ill. 218; *Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378.) Under the rule developed by these cases, an accident, to be within the Workmen's Compensation Act, "must be traceable to a definite time, place and cause." (*Matthiessen & Hegeler Zinc Co.* v. *Industrial Board,* 284 Ill. 378, 383.) Although some of the decisions contain language which may be somewhat indicative of a broader application, we are of the opinion that this definition is pertinent only with respect to the operation of the Workmen's Compensation Act, since it was derived from a construction of the provisions of that act, particularly the provision requiring that notice of the accident be given within thirty days. For

example, in the *Matthiessen & Hegeler case* the court observed: "The words 'accident' and 'accidental injury' *imply*, and the provisions for notice to the employer within thirty days after an accident \* \* \* *show*, that an injury, to be accidental or the result of an accident, must be traceable to a definite time, place and cause, \* \* \*." (Emphasis supplied.) In the *Labanoski case*, at page 221, the court stated: "The words 'accidental injury or death' are used and are to be understood in their popular sense," and pointed out that it was the "provision requiring notice within thirty days after the accident [that] shows the accident must be traceable to a definite time, place and cause." And in the *Peru Plow Co. case*, at page 222, the court again stressed this factor: "That this must be considered the intention of the legislature in passing the act is shown by the provisions of the act limiting the time in which notice may be given to the employer. If a definite time cannot be ascertained it is impossible to give the notice required by the act."

Even if the identical technique which has been employed in determining the meaning of "accident" in our Workmen's Compensation Act were applied to the insurance policy here involved, the same result would not necessarily follow. For here notice is required to be given only "as soon as practicable" after the occurrence and not, as the statute requires, within a specified number of days. But, apart from any such distinction, the question for decision here is not the meaning of the word "accident" in the context of the provisions of the Workmen's Compensation Act. The policy is a "Comprehensive General Liability Policy" which excludes from its coverage "any obligation for which the *insured* may be held liable under any workmen's compensation law." The meaning of the word "accident" as used in this policy is therefore to be determined apart from rules of strict construction applied to statutes "in derogation of the common law."

The construction to be given insurance contracts, like other contracts, should be a natural and reasonable one. (*Western and Southern Indemnity Co.* v. *Industrial Com.* 366 Ill. 240; *R. F. Conway Co.* v. *City of Chicago,* 274 Ill. 369.) If the language is clear, the terms are to be taken and understood according to their plain, ordinary and popular sense. (*Dempsey* v. *National Life and Accident Ins. Co.* 404 Ill. 423; *Pioneer Life Ins. Co.* v. *Alliance Life Ins. Co.* 374 Ill. 576.) But because the insurer is the one who prepares the contract, ambiguous or equivocal expressions whereby the insurer seeks to limit its liability will be construed most strongly against the insurer. *Pioneer Life Ins. Co.* v. *Alliance Life Ins. Co.* 374 Ill. 576; *Lenkutis* v. *New York Life Ins. Co.* 374 Ill. 136; *Midwest Dairy Products Corp.* v. *Ohio Casualty Ins. Co.* 356 Ill. 389.

Applying these principles and looking first to the "plain, ordinary and popular sense" of the term involved, Webster's New International Dictionary defines "accident" as "An event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event." It is apparent that Mary Moore's disability was an event that took place without her foresight or expectation; it thus falls within the first definition quoted. It also falls within the following definition in *Peru Plow Co.* v. *Industrial Com.* 311 Ill. 216, 220, "Those things which happen without design are commonly called an accident,—at least in the popular acceptation of the word. Any event unforeseen, not expected by the person to whom it happened, is included in the term." As we have stated, the "definite time and origin" qualification then developed by that case because of the notice requirements of the Workmen's Compensation Act is not here applicable.

The conclusion that this construction of "accident" is a natural and reasonable one, embodying the normal and customary use of the word as commonly understood, is reinforced upon examination of its application to the

instant situation. Although disability caused by exposure to radioactive material does not, of course, result automatically from following an occupation involving the use of such substances, it is well known that these materials must be used and handled with the utmost precaution or injury will result. It is only natural, therefore, that an employer engaged in handling these dangerous substances would seek insurance protection against accidents resulting from that use, and having procured a "Comprehensive General Liability Policy" covering his liability for damages because of "bodily injury, sickness or disease  *  *  * caused by accident," would feel protected against such mishaps. If the nature of radium were such that it could accomplish its injury in a single, blinding exposure due, for example, to faulty emanators or equipment or improper handling because of inadequate instructions, there could be little doubt as to the "accidental" nature of the event. The fact that the use of the faulty emanators or the improper handling must be carried on a number of times to effect the injury should not and does not render the event any less accidental, as that term is commonly understood by the ordinary businessman.

The result reached here is in accord with the weight of authority and what we believe are the better reasoned cases. *Maryland Casualty Co.* v. *Pioneer Seafoods Co.* 116 Fed. 2d 38; *Globe Indemnity Co. of New York* v. *Banner Grain Co.* 90 Fed. 2d 774; *Webb* v. *New Mexico Pub. Co.* 47 N. M. 279, 141 Pac. 2d 333; *Aldrich* v. *Dole,* 43 Idaho, 30, 249 Pac. 87; *McNeely* v. *Carolina Asbestos Co.* 206 N. C. 568, 174 S.E. 509; *King* v. *Travelers Ins. Co.* 123 Conn. 1, 192 Atl. 311; *Murphy* v. *Travelers Ins. Co.* 141 Neb. 41, 2 N.W. 2d 576; *Hoage* v. *Royal Indemnity Co.* 90 Fed. 2d 387; *Tomnitz* v. *Employers Liability Assurance Corp.* 343 Mo. 321, 121 S.W. 2d 745; cf. *Soukop* v. *Employers Liability Assurance Corp.* 341 Mo. 614, 108 S.W. 2d 86; *Updike Investment Co.* v. *Employers Liability As-*

*surance Corp.* 131 Neb. 745; *Shaw v. United States Fidelity & Guaranty Co.* 101 Fed. 2d. 92; *American Mutual Liability Ins. Co. v. Agricola Furnace Co.* 236 Ala. 535, 183 So. 677.

Defendant attempts to distinguish some of the cases cited upon the ground that particular policies employ the phrase "accidental injuries" or "accidental means" instead of "injuries caused by accident." While a few decisions have noted with approval a distinction based upon the use of the adjective rather than the noun, (*Victory Sparkler & Specialty Co. v. Francks,* 147 Md. 368; *Golden v. Lerch Bros. Inc.* 300 N.W. (Minn.) 207, p. 209, n. 4,) we consider it far too subtle for use in interpreting insurance policies. Courts should not adopt gossamer distinctions which the average man for whom the policy is written cannot possibly be expected to understand. The courts in the cited cases seem to have considered the meaning of these phrases to be the same since they make no mention of such a distinction and, indeed, occasionally employ the noun and adjective interchangeably. Moreover, the distinction contended for has been expressly rejected in *Lang v. Metropolitan Life Ins. Co.* 115 Fed. 2d 621; *Mansbacher v. Prudential Ins. Co.* 273 N. Y. 140, 7 N.E. 2d 18, 20, and *Burr v. Commercial Travelers Mutual Accident Assn.* 295 N. Y. 294, 301, 67 N.E. 2d 248.

Nor does the fact that some of the decisions cited are workmen's compensation cases, arising under statutes of the particular jurisdiction involved, constitute a sufficient ground for distinction. For, in those cases, it was held that the pertinent acts do not restrict or limit the commonly accepted meaning of the word "accident" as this court has held the Illinois act does.

In any event, it is apparent that, at the very least, ambiguity exists as to the content and scope of the word "accident," as employed in the policy issued to plaintiff.

Under the well-settled rule, the meaning of the word most favorable to the insured should be accepted, since the insurer prepares the contract. (*Mosby* v. *Mutual Life Ins. Co.* 405 Ill. 599; *Roth* v. *Kaptowsky,* 393 Ill. 484; *Pioneer Life Ins. Co.* v. *Alliance Life Ins. Co.* 374 Ill. 576.) This rule is particularly applicable where, as here, the very name of the plaintiff should have informed the insurer of the likelihood of occurrences such as the one described in Mary Moore's complaint against plaintiff in the Federal Court, and induced it, if it did not intend to insure against such a risk, to exclude specifically from coverage any liability because of injury, sickness or disease caused by radioactivity.

We are aware that several cases from other jurisdictions appear to have reached a contrary conclusion with respect to the scope of the word "accident." (*Golden* v. *Lerch Bros. Inc.* 211 Minn. 30, 300 N.W. 207; *U. S. Radium Corp.* v. *Globe Ind. Co.* 13 N. J. Misc. 316, 178 Atl. 271, affirmed 116 N.J.L. 90, 182 Atl. 626; *Taylor Dredging Co.* v. *Travelers Ins. Co.* 90 Fed. 2d 449 (C.A. 2d); *Jackson v. Employers' Liability Assurance Corp.* 248 N.Y.S. 207, affirmed 234 App. Div. 893, 254 N.Y.S. 1010, affirmed 259 N.Y. 559, 182 N.E. 180.) *Belleville Enameling & Stamping Co.* v. *United States Casualty Co.* 266 Ill. App. 586, cited by defendant, does not aid it. Although the case involved the insurer's liability under a "Standard Workmen's Compensation and Employers' Liability Policy" for damages for silicosis paid out by the insured, the meaning of the word "accident" was neither considered nor discussed.

We hold that the restricted meaning of the word "accident," as found in our Workmen's Compensation Act, does not apply here, and that because the "usual meaning of the word is broader" (*Globe Indemnity Co. of N. Y.* v. *Banner Grain Co.* 90 Fed. 2d 774, 783,) and covers the present situation, and because the ambiguity which would other-

wise result would have to be resolved against the insurer, the decision of the Appellate Court upon this point is erroneous and cannot stand.

One other question remains. In its motion to dismiss in the trial court, defendant set up two grounds—the scope of the word "accident" and the products exclusion endorsement—which it asserted relieved it of any duty to defend the action brought by Mary Moore. The motion was sustained by the trial court without specification as to which of these two grounds the judgment was based upon. The Appellate Court, having sustained the judgment of the superior court upon the ground that the disability of Mary Moore was not caused by "accident," found it unnecessary to and did not consider the other ground. Arguing that it is the judgment and not the opinion of the Appellate Court which is under review and that, if its judgment is correct, there must be an affirmance even though upon grounds other than those given in the Appellate Court's opinion, the defendant urges that this court now consider the other ground—the effect of the products exclusion endorsement. Plaintiff, although dubious of the propriety of such consideration, has joined in the contention and has also briefed the point in question.

The arguments of counsel on a point other than one decided by the Appellate Court are not properly directed to this court until the question has been first decided by the Appellate Court. Where a judgment of reversal by the Appellate Court is based upon an erroneous view of the law with respect to one branch of the case which it holds disposes of the whole case, and it appears from its opinion that for such reason it has refused to consider and pass upon meritorious assignments of error which it should consider, the cause will be remanded to that court upon reversal of its judgment, with directions to consider and pass upon such questions. *Armstrong Paint and Varnish Works* v. *Continental Can Co.* 301 Ill. 102; See, also, *Miller* v.

*Kresge Co.* 306 Ill. 104; *Logan* v. *Mutual Life Ins. Co.* 293 Ill. 510; *Mueller* v. *Elm Park Hotel Co.* 391 Ill. 391.

The judgment of the Appellate Court is reversed and the cause remanded to that court, with directions to consider the undecided contention with respect to the products exclusion endorsement and thereupon either to affirm the judgment of the superior court of Cook County or reverse the judgment and remand the cause, with directions to overrule defendant's motion for judgment.

*Reversed and remanded, with directions.*