Jack **DIAMOND**, d/b/a Palmer Super Service, Plaintiff-Appellant,

v.

**MASSACHUSETTS BONDING AND IN- SURANCE COMPANY**, Defendant-Appellee.

No. 11441.

United States Court of Appeals Seventh Circuit.

Oct. 13, 1955.

Paul A. La Rocque, Herbert D. Jones, Jr., Chicago, Ill., for plaintiff-appellant.

Harold J. Ross, Ross, Bercham, Schwantes & Thuma, Chicago, Ill., for defendant, Massachusetts Bonding and Insurance Company.

Before DUFFY, Chief Judge, and MAJOR and LINDLEY, Circuit Judges.

DUFFY, Chief Judge.

Plaintiff owned and operated a gasoline service station in the city of Chicago. For his protection in the operation of his business he purchased two insurance policies. One was from Hawkeye-Security Insurance Company which was a policy of public liability insurance covering the operation of motor driven vehicles owned by plaintiff including a tow truck. The policy limit was $10,000. The second policy was issued by defendant, Massachusetts Bonding and Insurance Company, which was known as a Premises Location Liability Policy and which covered damages resulting from the "operation of the premises in question."

On February 25, 1952 while both policies were in full force and effect, one Fred Wuersig, aged 82, was injured on plaintiff's premises by reason of being struck by plaintiff's tow truck which was then under control of one Mitchell, an employee. Thereafter Wuersig brought suit against Diamond, the plaintiff herein, in the Circuit Court of Cook County, Illinois, claiming damages of $40,000.

Immediately following the incident when Wuersig was injured, plaintiff reported the accident to Hawkeye-Security. No report was made to Massachusetts Bonding for some two months thereafter. When served with the summons in Wuersig's lawsuit, Diamond turned same over to Hawkeye-Security. Wuersig claimed damages on the theory that Diamond's tow truck was equipped, maintained, controlled and operated in an improper and negligent manner. There was nothing in Wuersig's complaint that charged a defect or hazard in Diamond's premises.

The attorney and adjuster for Hawkeye-Security and Wuersig's attorney agreed that the Wuersig lawsuit be settled by the payment of $6250. Hawkeye-Security issued two checks, one for $2500 payable to Wuersig, and one for $3750 payable to Diamond, who endorsed same, and that check also was turned over to Wuersig. Diamond, at the same time, signed a loan receipt prepared by Hawkeye-Security, which stated, in effect, that Diamond had borrowed $3750 from Hawkeye-Security. All negotiations to settle Wuersig's claim were carried on by Wuersig's attorney and Hawkeye-Security's attorney and adjuster. Hawkeye-Security requested Wuersig's attorney to enter an agreed judgment against Diamond after the settlement was made and this was done. This was a deviation from usual procedure.

Plaintiff did not know that the case at bar had been commenced in his name until he was served with a subpoena a few months before the date of the trial. He had no part in hiring the attorneys who appeared of record as his attorneys in this lawsuit.

At the close of the evidence adduced upon behalf of plaintiff in the case at bar, defendant, Massachusetts Bonding, moved for a directed verdict on two grounds: 1) Exclusion (b) in the policy Massachusetts Bonding issued to Diamond excludes coverage of accidents caused by power-driven vehicles; 2) Condition 8 of the policy bars this action against Massachusetts Bonding because a) Diamond did not comply with the

policy provisions; and b) Diamond's liability on the claim against him by Wuersig was not determined by judgment after actual trial, or by written agreement of Massachusetts. The trial judge granted the motion and directed a verdict in favor of the defendant herein.

Exclusion (b) of the policy issued by Massachusetts Bonding provides:

"This policy does not apply:

"(b) * * * to dogs owned by the insured, power driven or animal drawn vehicles, draft or saddle animals, including vehicles attached thereto, vehicles from which merchandise is sold, any other vehicle while rented to another, or the loading or unloading thereof, while away from insured premises and the ways immediately adjoining. This exclusion does not apply with respect to the following described equipment if not towed by or carried on a power driven vehicle not so described or if not rented to another; crawler-type (continuous tread) tractors, ditch or trench diggers, power cranes or shovels, graders, scrapers, rollers, well-drilling machinery, asphalt spreaders, concrete mixers, mixing and finishing equipment for highway work, other than concrete mixers of the mix-in-transit type, farm implements and, if not subject to motor vehicle registration, any equipment used principally on the insured premises, farm tractor or trailer;"

Massachusetts Bonding argues that injuries caused by any manually operated vehicle are covered by the policy if occurring on Diamond's premises, but that the extra hazard of power-driven vehicles is not insured by the "Premises" policy in question.

 In spite of defendant's argument to the contrary, we think there is an ambiguity in Exclusion (b)—in any event, that it cannot be construed as urged by defendant. We think a reasonable interpretation of the clause is that the policy does not cover a power-driven vehicle while away from Diamond's premises, but that it does cover such a vehicle while on said premises. It is interesting to note that the truck was being moved and struck Wuersig while the motor was not in operation. The truck moved because of the force of gravity, as the vehicle had been parked on an incline.

 We have here an instance where the policy must be construed against the insurance company which prepared the insurance contract. Pioneer Life Insurance Co. v. Alliance Life Insurance Co., 374 Ill. 576, 30 N.E.2d 66; Canadian Radium & Uranium Corporation v. Indemnity Insurance Co. of North America, 411 Ill. 325, 104 N.E.2d 250. We hold that the first ground stated by defendant in moving for a directed verdict cannot be sustained.

The second ground stated was divided in two parts, a) Diamond did not comply with the policy provisions, and b) Diamond's liability on the claim against him by Fred Wuersig was not determined by judgment after actual trial, or by written agreement with Massachusetts Bonding.

Defendant seeks to sustain the court's action in directing a verdict upon the No-Action Clause which is Condition 8 of the policy which reads:

"No action shall lie against the company unless as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company."

A No-Action Clause of practically identical wording was held valid and enforceable in Piper v. State Farm Mutual Auto Insurance Co., 1 Ill.App.2d 1, 116 N.E.2d 86. The Illinois court cited with ap-

proval the decision in Wisconsin Zinc Co. v. Fidelity & Deposit Co. of Maryland, 162 Wis. 39, 48, 155 N.W. 1081, 1085, where the court stated:

> "It is pretty evident that if the insurer intrusted the matter of making settlements to its numerous policy holders, its existence would be precarious. We are all apt to be generous when it comes to spending the money of others. So long as the law countenances and to some extent encourages insurance of this character, the right of making voluntary settlements must, almost as a matter of necessity, rest with the insurer rather than with the insured. An insurance company could hardly be expected to do business on any other basis, because it furnishes the only safeguard available against the payment of excessive damages."

 We hold that under Illinois law the No-Action Clause before us is valid and enforceable, and in the case at bar, justified the District Court in granting a directed verdict for the defendant.

We are also of the opinion that Diamond did not comply with the provisions of the policy issued by Massachusetts Bonding in giving notice of Wuersig's claim and suit. Diamond never asked Massachusetts Bonding to defend him in that suit. This action was conceived by Hawkeye-Security who employed attorneys to represent the plaintiff without his knowledge. The loan receipt transaction is transparent. It was Hawkeye-Security's money in the total sum of $6250 which purchased a release from liability on a policy where the liability limits were $10,000.

Believing that the District Court correctly granted the motion for a directed verdict, the judgment in favor of defendant, Massachusetts Bonding and Insurance Company, is

Affirmed.