W. W. PETERSON AND WIFE, PEGGY G. PETERSON v.
ROYAL INSURANCE COMPANY.

(Filed 14 October, 1959.)

**1. Insurance § 95—**

The word "explosion" as used in a property damage policy must be given its ordinary meaning, which imports a violent expansion, incident to internal pressure, resulting in bursting or disruption.

**2. Insurance § 96—**

Proof of damage from concussion, without any evidence tending to explain the cause of the concussion, is insufficient to establish loss from explosion within the meaning of that term as used in a policy of property damage insurance which excludes liability for damage from concussion unless caused by an explosion, the words "concussion" and "explosion" not being synonymous.

HIGGINS, J., not sitting.

APPEAL by plaintiffs from *Parker, J.,* June, 1959 Civil Term, of NEW HANOVER.

Defendant issued its policy insuring plaintiffs' home against damage by fire or lightning. For an additional premium a so-called rider was attached extending the coverage to include loss by explosion. Plaintiffs brought this action to recover damages done to their home by an alleged explosion. Defendant admitted issuing the policy with the attached rider but denied that plaintiffs had been damaged by an explosion as defined in the policy. At the conclusion of plaintiffs' evidence defendant moved for nonsuit. The motion was allowed and plaintiffs appealed.

*Lonnie B. Williams and O. K. Pridgen II for plaintiff, appellant.*
*Poisson, Campbell & Marshall for defendant, appellee.*

RODMAN, J. The policy, so far as pertinent to this controversy, provides: ". . . the coverage of this policy is extended to include direct loss by . . . explosion . . ."

"PROVISIONS APPLICABLE ONLY TO EXPLOSION: Loss by explosion shall include direct loss resulting from the explosion of accumulated gases or unconsumed fuel within the firebox (or combustion chamber) of any fired vessel or within the flues or passages which conduct the gases of combustion therefrom. However, this Company shall not be liable for loss by explosion, rupture or bursting of: (a) steam boilers, steam pipes, steam turbines or steam engines; or (b) rotating parts of machinery caused by centrifugal force; if owned by, leased by or actually operated under the control of the insured.

"The following are not explosions within the intent or meaning of these provisions: (a) Concussion unless caused by explosion, (b) Electrical arcing, (c) Water hammer, (d) Rupture or bursting of water pipes.

"Any other explosion clause made a part of this policy is superseded by this Extended Coverage."

"INHERENT EXPLOSION CLAUSE: This policy shall cover direct loss to the property covered caused by explosion occurring in the described dwelling or appurtenant private structures or in any structure containing property covered hereunder from hazards inherent therein, but this Company shall not be liable for loss by explosion originating within steam boilers, steam pipes, steam turbines, steam engines, or rotating parts of machinery caused by centrifugal force. Concussion, unless caused by explosion; electrical arcing; water hammer; rupture or bursting of water pipes are not explosions within the intent or meaning of this clause."

Plaintiff W. W. Peterson testified: "I heard something that day. It sounded like an explosion . . . Yes sir, it was a tremendous noise, and it shook the building we were in. Yes sir, I felt a concussion, a vibration from that noise. Yes sir, there was a compression. Our garage has a forty-foot span with two steel beam stringers trussed from one pilaster to the other. Our garage does not have any structure under the roof or over the roof. We looked up and those trusses were vibrating . . . There were two doors that were not up at that time . . . . and the vibration from that noise had those doors going in and out approximately three inches. Yes sir, the doors shook . . . . I felt the ground shock. I was working on a car inside the shop. I went outside the minute the shock was over. We looked to see if we could find any fire or smoke, because we knew something had blown up. . . . I did not see any airplanes in the sky. . . . I could not determine where this tremendous noise and force came from. . . . There was a tremendous noise and pressure and the earth trembled. . . ."

The incident about which he testified occurred between 11:00 o'clock and 12:00 o'clock. He went to lunch about 1:00 o'clock. He then observed: ". . . the porch had been moved over from the house over 3/8 inch at one end. The porch consists of a cement slab approximately three inches thick; eight feet wide and twelve feet in length. Yes sir, it was separated from the house. Then we seen some small particles of cement, or chips, and at that point we seen the places where they were busted open all over the house. The blocks were busted open and at the southwest corner every block had split, and the more we went around the house, the more we found wrong with it. . . . There are glass, frame windows in the house, I did not find

any windows broken out. . . . We were living in it. We had a cabinet 36 inches high in the kitchen. No, we did not find any dishes or china broken; they were on the top shelf. They were not thrown to the floor. . . . No water pipes were broken that I know of. . . . I found no sign of damage to the electrical fixtures. We have an oil fired furnace; kerosene oil. . . . That was not damaged. The tank outside was not disturbed. It was still on its foundation. . . . My garage is approximately 200 feet from the nearest corner of my house; it is less than a city block. . . . Yes sir, it shocked the floor. Yes sir, I could feel the floor vibrate. . . . As far as I know, there was no explosion of anything in my house. I have a barn. There was nothing in it that could have exploded. I have a pump house. There was nothing in it that could have exploded. Yes sir, when I heard this noise, and felt this vibration in the garage, we run out into the open. . . . I have not determined what caused those vibrations or where they originated from. I felt that was not up to me to have to prove what done my damages."

Norwood Sommersett testified: "On that date I was under the hood of an automobile. The automobile was in the garage. I heard a blast with a pressure behind it on my body. I was looking out for myself. Yes sir, I heard a blast. Everything shook; me and the ground. No sir, I had never felt a pressure that struck my body before or since like that."

Lonnie Jones testified: "I don't know what it was. I never found out. It sounded like something blew up. Like, Doom, or something, and we all walked out, and the doors rattled, and we didn't see anything."

C. W. Bailey, who lived across the street from plaintiffs, testified: "Well, there was a terrific blast and shock, or snatch, that would take you off your feet. A terrific noise; it sounded like a terrible gun fired, or something. . . . I could not determine how far it was or where it came from. It seemed in a southern or southeastern direction. . . ."

Plaintiffs do not contend and their evidence negatives any idea that an explosion occurred "in the described dwelling or appurtenant private structures." Their position is an explosion occurred at some unknown place which put in motion forces causing damage to their property.

The evidence is sufficient to establish damage to their home caused by a sudden and violent movement of the air or shaking of the earth, or both. This evidence is sufficient to establish injury by concussion, which Webster defines as "shaking or agitation, a shock caused by the collision of two bodies," Webster's New Int. Dic., 15 C.J.S. 806, but

concussion and explosion are not the same. The policy expressly declares: "the following are not explosions within the intent or meaning of these provisions: (a) concussion unless caused by explosion."

What caused or produced the concussion? Was it an explosion or some other, unexplained cause? The answer cannot be left to conjecture or speculation. *Wall v. Trogdon,* 249 N.C. 747, 107 S.E. 2d 757: *Lane v. Bryan,* 246 N.C. 108, 97 S.E. 2d 411; *Samet v. Insurance Co.,* 237 N.C. 758, 75 S.E. 2d 913.

The word "explosion" as used in the policy should be given that meaning which it has in common parlance. Webster defines explosion as "act of exploding, detonation, a violent bursting or expansion, with noise, following the sudden production of great pressure as in the disruption of a steam boiler."

Internal pressure causing a sudden expansion resulting in bursting or disruption are essential elements of an explosion. In *Bolich v. Insurance Co.,* 205 N.C. 43, 169 S.E. 826, plaintiff testified: "He stepped on the starter, and the exhaust of the motor blew up. It threw water to the ceiling. I was standing in front of the car, but was not looking into the radiator. The water was hot, and struck me in the face. When the mechanic stepped on the starter, there was a terrible combustion in the motor." It was this "liberation of warm or hot water from its environment," which the court said would constitute an explosion.

The facts detailed by plaintiff in *Polansky v. Insurance Assoc.,* 238 N.C. 427, 78 S.E. 2d 213, are sufficient to establish an explosion within the accepted definition of that word.

The definitions of explosion given by courts accord with the definition given by Webster. *Wadsworth v. Marshall,* 88 Me. 263, 32 L.R.A. 588; *Little Rock Ice Co. v. Consumers' Ice Co.,* 170 S.W. 241 (Ark.); *Sweeney v. Blue Anchor Beverage Co.,* 189 A 331 (Pa.); *Commercial Union Fire Ins. Co. v. Bank of Georgia,* 197 F 2d 455; *L. L. Olds Seed Co. v. Commercial Union Assurance Co.,* 179 F 2d 472; *Heffron v. Jersey Insurance Company of New York,* 144 F Supp. 5, s.c. 242 F 2d 136; *United Life, Fire and Marine Ins. Co. v. Foote,* 10 Am. Rep. 735 (Ohio); Annotations, 28 A.L.R. 2d 997; 35 C.J.S. 215, 216.

Plaintiffs have done no more than establish damage by forces which may have been set in motion by an explosion. That is not sufficient.

Affirmed.

HIGGINS, J., not sitting.