## Pottash v. Merchants and Business Men's Mutual Fire Ins. Co.

*Zoob, Cohan & Matz* and *Richter, Levy, Lord, Toll & Cavanaugh,* for plaintiffs.

*H. M. Schell,* for defendants.

GOLD, P. J., December 8, 1961.—Plaintiffs, Harry and Ralph Pottash, commenced suit on three separate fire insurance policies, each of which contained extended coverage protection against direct loss by explosion. Plaintiffs' claim is for damages to their apartment house, which they allege was caused by an explosion. The cases were consolidated and tried before President Judge Joseph E. Gold and a jury for approximately three weeks, commencing February 8, 1961. The jury returned a verdict in favor of plaintiffs in the amount of $20,000 against defendants collectively. Defendants each filed motions for judgment n.o.v. and new trial which are now before us.

In support of their motions for judgment n.o.v., defendants make two contentions:

1. There was no direct loss to the apartment house from the explosion; and

2. Plaintiffs may not recover because they did not file sworn proofs of loss within 60 days of the loss.

We shall discuss these questions seriatim.

We approach and consider defendants' motion for judgment n.o.v., aware that the evidence in the entire record is to be taken and considered in a light most favorable to plaintiffs, and that plaintiffs are to be given the benefit of all reasonable inferences arising therefrom: Green v. Prise, 404 Pa. 71 (1961); Fenstermaker v. Bodamer, 195 Pa. Superior Ct. 436 (1961); Baker v. Hupert, 194 Pa. Superior Ct. 423 (1961).

Viewed in this light, the record discloses the following facts: Ralph and Harry Pottash purchased an apartment house situated at 3416-18 Haverford Avenue, in the City of Philadelphia, in July, 1952. The apartment house is a four-story building constructed of brick at the rear and on both sides; the front of the building was constructed of brick to the second floor and stucco above. Each of the defendants had issued policies insuring plaintiffs' apartment house against damage by fire and lightning and direct loss by explosion.

On March 28, 1956, at or about 8:00 P.M., a violent explosion occurred at the Tidewater Grain Elevator, located on Market Street between 30th and 31st Streets, in the City of Philadelphia. The distance from the point of the explosion to plaintiffs' apartment house is approximately 3,600 feet. Several witnesses, who were tenants of the apartment house on the night of the explosion, testified that they heard a loud boom, windows were broken, the building began to sway, pictures hanging on the wall of one apartment fell to the floor, and, in another apartment, a card table was lifted from the floor causing checkers to fall, and one tenant was thrown out of his bed. In addition to a number of windows and window sashes being broken, a water line was broken, causing it to leak. Some of the heavy coping was blown off the parapet of the roof. Plaster fell from the ceilings of two apartments, and one of the floors was caused to buckle. David Sloan, a structural engineer, testified on behalf of plaintiffs, that he had conducted a thorough examination of the building immediately after March 28, 1956. He found various cracks in the walls of the building, which appeared to be fresh and had not resulted from settlement of the building. It is these cracks which constitute the primary elements of damage for which plaintiffs seek recovery. He testified that the walls could be made

serviceable by the use of tie rods which would cost approximately $1,800; however, to replace the cracked portions of the walls would involve the expenditure of a sum of approximately $37,000.

With reference to the direct loss caused by explosion, the main witness for plaintiff was Mr. Allen Johnson, a registered professional engineer, and author of a book and various articles on the subject of explosions. He described at length to the jury exactly what occurs in an explosion. He stated, in effect, that the instant explosion was caused by the sudden oxidation of a highly combustible material; i.e., corn dust, which instantly released energy and developed a pressure which attacked the walls of the Tidewater Grain Elevator and caused them to burst. There was considerable attendant damage to the adjoining area within a radius of 500 feet.

According to Mr. Johnson, the sudden release of energy created a shock wave which spread over the area. He equated this shock wave with air concussion, and in his opinion, the shock wave or air concussion was not only an integral part of the explosion but was the explosion itself.

In answer to a hypothetical question propounded by plaintiffs' counsel, in which he assumed the existence of certain damage to the walls of the apartment house, and the further existence of the fact that this damage (cracks) was not present before the explosion, he stated unequivocally that the damage to plaintiffs' apartment house was caused by the explosion at the Tidewater Grain Company.

On this issue, defendant contends the word "explosion", as used in the policies, should receive its ordinary and popular meaning, and does not include a shock wave or air concussion as described by Mr. Johnson.

We believe the term "explosion", as used in the standard insurance contract, must include shock wave

or air concussion. There is no disagreement that the damage caused by an explosion is the result of either release of pressure or air concussion. To accept defendants' interpretation of the word "explosion" would mean that there could be a recovery for explosion damage only when it resulted from release of pressure. However, it is clear from an examination of the pertinent provisions of the insurance contracts that there is no exclusion, whatsoever, of damages caused solely by air concussion. If defendants intended to exclude air concussion damages from the explosion coverage under these policies, they could well have done so. Based on the relevant terms of the policies and the expert opinion evidence adduced by plaintiffs on the subject of explosions, we are convinced the jury was warranted in concluding that the damage to plaintiffs' property caused by air concussion was within the risk of explosion loss assumed by defendants under the insurance policies issued to plaintiffs.

Our thorough search of the Pennsylvania authorities has proven unrewarding in that we have not found a single decision on the exact issue here involved. However, after diligent research of the authorities of other jurisdictions, we are convinced that the manifest weight of authority clearly sustains the proposition that damage to an insured property, caused only by concussion consequent upon an explosion, occurring at a distance from the premises upon which the insured property is situated, while not recoverable under a fire insurance policy, would be recoverable under explosion insurance: Caballero v. Home Mut. Ins. Co., 15 La. Ann. 217 (1860) ; German Fire Ins. Co. v. Roost, 55 Ohio 581, 45 N.'E. 1097 (1897) ; Hustace v. Phenix Ins. Co. of Brooklyn, 175 N.Y. 292, 67 N. E. 592 (1903) ; Hall & Hawkins v. National Fire Ins. Co., 115 Tenn 513, 92 S. W. 402 (1906) ; Metropolitan Casualty Ins. Co. of N. Y. v. Bergheim, 21 Colo. App.

527, 122 Pac. 812 (1912); Northwestern National Insurance Co. v. Mims, 226 S. W. 738 (Texas, 1920).

In Peterson v. Royal Ins. Co., 251 N. C. 61 (1959), a case most directly bearing on the issue before us, suit was brought on a fire policy which contained extended coverage for loss caused by explosion. Excluded from such protection was "concussion unless caused by explosion". Plaintiffs' evidence related solely to the concussion damage but failed to connect the concussion to any explosion. A non-suit was granted. We agree with the rationale of this decision; ergo, if air concussion is caused by or is an integral part of an explosion, and the evidence connects the damage to air concussion, the proximate cause of damage is the explosion.

Our thinking is supported by Joyce, The Law of Insurance, vol. 4, (2nd ed.) §2586, wherein it is stated that where an explosion occurs upon premises other than the insured premises with consequent loss to the insured property caused solely by air concussion, the loss is attributable to explosion only.

In Northwestern National Insurance Co. v. Mims, supra, plaintiff's insurance protected him against direct loss by fire and excluded loss by explosion, unless fire ensued, and then only for fire damage. Plaintiff brought suit on his policy, and the court held that no coverage existed under the fire policy. The court, relative to the issue before us, stated:

". . . Insurance against explosion loss is a distinct branch of the insurance business. Explosions not infrequently occur, caused by antecedent fires, which damage buildings for miles around. In such a case, could the holder of a fire insurance policy, with an explosion [exclusion] clause therein, as here presented, covering *a building situate several miles distant from the explosion,* recover for the damage to his building caused by the *concussion of the distant explosion?* We

think not. *Such a loss falls within the scope of explosion insurance rather than fire insurance."* (Italics supplied). (p. 742).

Defendants contend, as above stated, that the term "explosion" as used in the policies does not comprehend a shock wave or air concussion, which was established by the jury's verdict to have caused the damage to plaintiffs' premises. They cite Bird v. St. Paul F. & M. Ins. Co., 224 N. Y. 47 (1918), and Tannenbaum v. Connecticut Fire Insurance Ins. Co., 127 Pa. Superior Ct. 278 (1937) as controlling this issue. However, as we read the Bird case, it supports plaintiffs' position and not that of defendants. In Bird, a fire broke out beneath freight cars loaded with explosives. A series of explosions and fires then ensued, the last of which caused an explosion of dynamite stored in the freight yard. This last explosion resulted in air concussion, causing damage to plaintiffs' vessel about 1,000 feet away. Suit was brought on a policy of insurance covering loss only by fire with no extended coverage for explosion. We agree with the rationale of this case; to wit, that the loss complained of was not directly caused by fire.

In Tannenbaum, also a suit on a fire policy, the court concluded there was no evidence from which the jury could find that a fire preceded the explosion.

Defendants contend that damage by explosion must, of necessity, be confined to the immediate area of the point of explosion, and that damage by air concussion to a building 3,600 feet away is so remote that, as a matter of law, we are compelled to hold that the explosion at the Tidewater Grain Elevator could not have caused the damage to plaintiffs' property; i.e., the cracks in the walls. This argument conveniently ignores the other damage heretofore related to plaintiffs' apartment house, which plaintiffs and their witnesses saw after the explosion. We are unwilling to

declare, as a matter of law, that the cracks in plaintiffs' apartment house could not have been caused by air concussion. We strongly feel that such a construction, as contended for by defendants, does not give full effect to the word explosion as it is used in modern insurance contracts, and we therefore reject the first reason assigned for entering judgment n.o.v. . . .

### Order

And now, December 8, 1961, defendants' motions for new trial are dismissed; plaintiffs' exception to the verdict, regarding the rate of interest, is sustained and the verdict is amended to include 6 percent interest, calculated from February 3, 1957; defendants' motions for judgment n.o.v. are also dismissed. Accordingly, judgments are entered on the verdict as herein amended.