Mae M. JACKSON, Plaintiff,

v.

The AMERICAN MUTUAL FIRE INSURANCE COMPANY, Defendant.

No. C–135–R–66.

United States District Court
M. D. North Carolina,
Rockingham Division.

Oct. 2, 1968.

William D. Sabiston, Jr., Carthage, N. C., for plaintiff.

James D. Blount, Jr., Rockingham, N. C., for defendant.

## MEMORANDUM OPINION

GORDON, District Judge.

This case was instituted by the plaintiff to recover for damages to plaintiff's dwelling and contents situated therein, under a Homeowner's Insurance Policy issued by the defendant, by reason of the overflow of raw sewage from within the plumbing system in plaintiff's home.

Plaintiff contends that her loss is covered in paragraphs numbered 4 and 15 of defendant's policy under the heading "Perils Insured Against." Defendant contends that Paragraph 4 of its policy is inapplicable and that under the "Special Exclusions" provision of its policy, defendant is not liable for any damages insured against under Paragraph 15 where such damages are caused by "water which backs up through sewers or drains."

On this issue properly joined, for reasons which are more fully set out herein, the Court concludes that the damage to the plaintiff's dwelling and contents are not covered by the insurance contract and denies the relief requested.

The case was duly brought on for trial before the Court without a jury. There is no substantial controversy on the facts. Having considered the evidence, proposed findings of fact presented by counsel, briefs, oral arguments, and the entire official file, the Court makes the following findings of fact:

1. The plaintiff, Mrs. Mae M. Jackson, is a citizen of the State of North Carolina. The defendant, American Mutual Fire Insurance Company, is a corporation incorporated under the laws of the State of South Carolina and has its principal place of business in that state. The parties are properly before the Court and the Court has jurisdiction of the parties and of the subject matter of this litigation.

2. On February 15, 1966, the plaintiff was the owner of a house and lot, together with certain household and kitchen furnishings situated at 117 West Plank Road, in the Town of Robbins, Moore County, North Carolina; that on said date the plaintiff was occupying the home as its owner.

3. The plaintiff's home was a one story house with basement at the ground level. The lot on which plaintiff's home was situated slopes very sharply away from Plank Road so that the main floor could be entered through a front door at the ground level and the basement could be entered through a back door at the ground level.

4. On February 15, 1966, the property of the plaintiff was covered by a homeowner's insurance policy issued by the defendant; that said policy was policy No. H 58 45 06, and on February 15, 1966, the premiums on said policy had been paid and the policy was in full force and effect.

5. The terms and provisions of the contract of insurance were valid and binding on the plaintiff and defendant; that among other provisions, the policy contained the following:

"This policy insures under Section 1 against direct loss to the property covered (and additional living expenses resulting from such loss) by the following perils as defined and limited herein:

\* \* \* \* \* \*

"4. *Explosion.*

\* \* \* \* \* \*

"15. *Accidental discharge, leakage or overflow of water or steam* from within a plumbing, heating, or air conditioning system or domestic appliance, \* \* \*"

6. That in addition, the contract of insurance contained the following specific provisions:

"*This Company shall not be liable:* \* \* \* (b) as respects Perils 3, 5, 12, 13, 14, 15, 16, 17 and 18: for loss caused by, resulting from, contributed to or aggravated by any of the follow-

ing: \* \* \* (2) water which backs up through sewers or drains; \* \* \* unless loss by fire or explosion ensues, and this Company shall then be liable only for such ensuing loss; \* \* \*"

7. On February 15, 1966, the Town of Robbins, North Carolina, operated and maintained a sewerage system which system included, among other lines and outfalls, a main outfall sewer in the right-of-way of Plank Road (also designated as N.C. Highway No. 705 or Middleton Street) which outfall carried sewage north toward Bear Creek.

8. The plaintiff's home was situated on Plank Road at a point where the road falls sharply downhill going in the direction of Bear Creek; that the plaintiff's home was the last house on Plank Road before it intersected Bear Creek, being located on the west, or downhill, side of Plank Road. The lot on which the home of the plaintiff was situated slopes very sharply away from Plank Road and the main, or upper floor, including the living quarters of the plaintiff, was below street level.

9. The Town of Robbins, some years prior to February 15, 1966, had constructed and maintained a manhole situated in Plank Road slightly north of the front of plaintiff's home which faced the road. This manhole, on the downhill side of plaintiff's home, was the junction point of an eight inch sewer line and a fifteen inch sewer line. The eight inch sewer line entered the manhole from the west side of Plank Road and extended from that point in a general southwest direction for a distance of 320 feet where it connected with another manhole. The fifteen inch sewer line entered the manhole, in front of plaintiff's home, from the east side of Plank Road and extended some distance in a general east and southeast direction.

10. Plaintiff's private sewer line connected with the eight inch sewer line of the Town of Robbins at a point southwest of the manhole near the front of plaintiff's home, and the floor level of the main floor of plaintiff's home was seven inches above the level of the manhole. There was a heavy cast iron cover on the manhole located in front of the plaintiff's home that had, prior to February 15, 1966, been completely covered over by asphalt paving, so sealing it down that it could not be raised by water pressure from below.

11. The sewerage system of the Town of Robbins, North Carolina, was not equipped with an emergency, or relief, sewer to carry off excess flow from the outfall in Plank Road; that the storm sewers of the Town of Robbins, North Carolina, empty into the sanitary sewerage system, and that in the early evening on February 15, 1966, there had been a rainstorm in and around the area of the Town of Robbins, North Carolina.

12. The Town of Robbins maintained two manholes on Plank Road between the manhole in front of the plaintiff's home and Bear Creek. The sewage that collected in front of the plaintiff's home flowed by gravity through a fifteen inch line through the manhole located approximately 200 feet northwest of the manhole in front of plaintiff's home, and on into the next manhole which is located approximately 500 feet southwest of Bear Creek. Then, the sewage flows in a northeasterly direction through the fifteen inch line where, on February 15, 1966, it emptied into a concrete pit, which was protected by a grill or bar screen, and from the bar pit the sewage flowed directly into Bear Creek in its raw state.

13. The manhole located approximately 320 feet southwest of the manhole in front of plaintiff's home is four feet and nine inches higher in elevation than the manhole in front of plaintiff's home. Both manholes have an inside diameter of four feet and the manhole covers weigh approximately 120 pounds.

14. On February 15, 1966, the ground was wet with snow. The rainstorm, referred to in paragraph 11 above, caused a rapid melting of snow resulting in approximately 100 per cent runoff of water, thus causing a considerable accumulation of rain water and

storm water in the sanitary sewerage system of the Town of Robbins. The sewer lines became surcharged, that is, completely full, with the result that when the water from the fifteen inch line and the eight inch line emptied into the manhole nearest the front of plaintiff's home, the fifteen inch line leaving this manhole did not have sufficient capacity to carry the combined load of sanitary sewage and storm water. This condition brought about a slowing down of the velocity in a backlog, a back pressure pushing the water or actually bringing the water to virtually a standstill. This did not cease the flows coming from high points within the town. As the water continued to flow in the eight inch line and the fifteen inch line, the water backed up in the fifteen inch line past the manhole in front of the plaintiff's house. The manhole became full, but due to the fact that the cast iron cover had been completely covered by asphalt paving, it could not be raised by water pressure from below.

15. All of the commodes, sinks, and lavatories in plaintiff's home were equipped with traps, or a pocket in the drain pipes which are never completely drained. The purpose of these traps is to seal off odors, and water pressure is required to push or force the water out of these traps.

16. On February 15, 1966, about 9:30 P.M., plaintiff was sitting in the den of her home watching a television program when she heard a loud roar which she described as sounding like the roar of an airplane directly over her house. This roar was immediately followed by a loud noise. At first, the plaintiff thought that there had been an explosion at the poultry processing plant across Plank Road from her home. The following day the plaintiff observed a cracked front window, but it is uncertain from the evidence just when the crack occurred.

17. Within a few seconds after the noise, raw sewage began overflowing from the commodes, and other fixtures in the bathroom, on the upper floor level of the plaintiff's home. The sewage continued to overflow for five to seven minutes. During this five to seven minutes, the upper floor of the plaintiff's home became covered in some places ankle deep with the overflow.

18. There was no sewage overflow from the fixtures in the basement portion of the house. The only water or sewage which went into that portion of the house was such as flowed down the steps or otherwise drained from the main, or upper, level.

19. None of the pipes or plumbing fixtures in the plaintiff's home was in any way cracked, broken, shattered, or damaged in any manner whatsoever at the time of or immediately following the onset of the sewage overflow. There was no damage to the sewer lines of the Town of Robbins in the nature of any rupture, break or other damage.

20. A few minutes after the overflow in the plaintiff's home, an employee of the Town of Robbins, Mr. Norman Slack, went to the concrete pit, referred to in paragraph 12, and observed that the grill was covered with trash and debris. He did nothing to clear the debris, but while he was present, the flow of sewage began to gradually decrease.

21. Some two or three days following February 15, 1966, Mr. David E. Bullard, a sanitation engineer with the engineering firm of Gardner and Associates, visited the plaintiff's home and surrounding area for the purpose of making an investigation to determine the cause of her loss and damage. In the course of this investigation, it was discovered that the manhole cover on the manhole located about 320 feet southwest of the manhole in front of plaintiff's home had been dislodged and an overflow of sewage had occurred at this manhole. This manhole cover weighed 120 pounds and would have required one-fourth of a pound per square inch of hydrostatic pressure to lift the manhole cover from its regular position.

22. The manhole in front of the plaintiff's home could not be dislodged to relieve the pressure because it had

been sealed by asphalt. Since this manhole was sealed, the water continued to back up in the eight inch line to which the plaintiff's sewer line was connected. As the pressure continued to build up, the next place it could relieve itself was the plaintiff's service line. This caused the sewage to overflow into the plaintiff's home and this continued until the water backed up to the next manhole and the pressure forced the cover off thereby relieving the pressure.

23. From the evidence it is concluded that the damage to the plaintiff's home was not caused by an explosion within the plaintiff's plumbing system or within the sewer system of the Town of Robbins.

24. The overflow of sewage in the plaintiff's home, and the resulting damage to her property, was caused by the sewer line becoming surcharged which forced the water to back up in the sewer lines of the Town of Robbins and on up the eight inch line until it reached the line connecting the plaintiff's plumbing system with the Town's sewer line where it found its first outlet, thereby causing the water and sewage to overflow from the plumbing fixtures in the plaintiff's house.

### DISCUSSION

1. *Was there an explosion within the Meaning of the Policy?*

Counsel for the plaintiff concedes that the burden is upon the plaintiff to prove that her loss was covered by the policy. Therefore, the plaintiff has the burden of proving that an explosion occurred. The plaintiff has not met this burden.

 The plaintiff testified that on the evening of February 15, 1966, about 9:30 P.M., she heard a loud roar which she described as sounding like the roar of an airplane directly over her home which was followed by a loud bursting noise that sounded like an explosion. She testified that she thought it came from the poultry plant across the street and when she started to look, she saw the sewage pouring from the commode.

This testimony and the evidence considered in its entirety is insufficient to establish that the damage was caused by an explosion.

In Peterson v. Royal Insurance Co., 251 N.C. 61, 110 S.E.2d 441 (1959) the Supreme Court of North Carolina, after holding that proof of damage from a concussion, without explanation as to the cause of the concussion, is insufficient to establish a claim under an insurance policy covering loss by explosion, stated:

"Internal pressure causing a sudden expansion resulting in *bursting or disruption* are essential elements of an explosion." (Emphasis added)

In the case presently before this Court, the evidence shows no bursting or disruption resulting from the pressure that built up in the sewer lines.

2. *Is the plaintiff's loss excluded by Section (b) (2) of the "Special Exclusions" provision of the insurance policy? If so, is there an irreconcilable conflict between the insuring clause and the exclusion clause of the contract?*

Clearly, the plaintiff's loss was caused by an accidental discharge or overflow of water and sewage from within the plumbing system in the plaintiff's home. Paragraph 15 under "Perils insured against" covers plaintiff's loss and damage—irrespective of whether there was an explosion or not—unless the loss is excluded under paragraph (b) (2) of the special exclusions which excepts "loss caused by, resulting from, contributed to or aggravated by * * * (2) water which backs up through sewers or drains."

 The plaintiff contends that the special exclusion provisions relied upon by the defendant was not intended to defeat the coverage provided for in paragraph 15. In any event, plaintiff contends that if the excepting clause can be construed as limiting recovery under paragraph 15, then there certainly exists an irreconcilable conflict between the insuring clause and the exclusion clause of the contract and the Court, under such

circumstances, is justified in finding the contract to be ambiguous. If the contract is found to be ambiguous, then as a matter of law, the contract will be construed more favorable to the insured who did not prepare it.

The defendant contends that both parties are bound by the clear and unequivocal language of the insurance contract entered into between them, and in this case, the clear language of the "Special Exclusions" provision is that with respect to peril number 15 damage caused by "water which backs up through sewers or drains" is unequivocably excluded from coverage.

As the Court interprets the insurance contract, the plaintiff's loss would clearly fall within the exception established by paragraph (b) (2) of the special exclusions. The plaintiff's loss resulted from the water backing up in the sewer lines of the Town of Robbins until it reached the plaintiff's service line causing the water and sewage to overflow into the plaintiff's home. Thus, the plaintiff cannot recover under insuring clause number 15 unless there exists an irreconcilable conflict between the clause and the exclusion clause.

No conflict is found between the two clauses. The insuring clause insures generally against loss caused by the accidental discharge or overflow of water from within the plumbing system. Without the "special exclusions," this clause would insure against any loss caused by such overflow from within the plumbing system. However, the provisions under clause (b) of the special exclusions limits this coverage by excepting overflow caused by certain outside forces. Clause (b) (2), unfortunately for the plaintiff, excepts any loss resulting from "water which backs up through sewers or drains." This must refer to sewers or drains outside the plaintiff's plumbing system, that is, the sewers or drains in the sewer system of the Town of Robbins. This interpretation is reinforced by the fact that all of the other exceptions under clause (b) except loss caused by forces outside the plaintiff's plumbing system.

The insuring clause would cover any accidental discharge or overflow of water from within the plumbing system resulting from defects in the plumbing system such as a pipe within the system clogging thereby causing the pipe to fill and overflow. The insuring clause would also cover any other such discharge or overflow resulting from any cause not specifically excepted under the "Special Exclusions." Therefore, the exception merely carves out of the general class of contingencies covered certain types of losses to be excepted and there is no conflict between the two clauses.

Counsel for the plaintiff relies on the case of World Fire & Marine Ins. Co. v. Carolina Mills Distribution Co., 8 Cir., 169 F.2d 826, 4 A.L.R.2d 523 (1948) to support the plaintiff's position that the loss is covered by the insurance contract. There the insurance policy was a water damage policy which insured "against all direct loss and damage caused solely by the accidental discharge, leakage or overflow of water * * * from within the following source or sources: Plumbing systems * * *" The policy contained the following exception: "This Company shall not be liable for loss or damage caused directly or indirectly * * * by floods, inundation, backing up of sewers or drains, or the influx of tide, rising or surface waters * * *"

*World Fire & Marine Ins. Co.* is distinguishable from the subject case on its facts. There, the court stated:

"It is clear from the evidence that had the cap on the 'house trap' not broken, the pressure from the overloaded main sewer would not have forced the water from that sewer high enough in the plumbing system inside the building to overflow from toilets on the first floor of the building, and no damage would have resulted from the pressure in the city's main sewer." 169 F.2d at 828.

So the damage could not have occurred in this case except for the breaking of the cap on the "house trap" which the court regarded as the independent cause of the water damage. In the case presently before this Court, there is no independent cause, and the damage resulted solely from the water and sewage backing up through the sewers of the Town of Robbins. Had there been an independent cause for the damage, the plaintiff's argument that the insuring clause and the exclusion clause are conflicting and ambiguous would be much stronger.

In *World Fire & Marine Ins. Co.*, the court interpreted the exception "backing up of sewers or drains" to cover losses having no connection with the plumbing system. Such an interpretation would be unreasonable in the case before this Court. If the parties had intended the exception to cover only the discharge or overflow of water outside the plumbing system, they would not have referred to clause 15 when they excepted "water which backs up through sewers or drains." The reference to clause 15 under "Perils insured against" indicates that the parties intended to exclude something from the coverage under this clause. If we interpreted the exclusion clause to cover only the discharge or overflow of water outside the plumbing system, this would not have been covered by clause 15 under any circumstances because that clause covers only the accidental discharge, leakage or overflow of water from within the plumbing system. So it would appear that the parties intended to exclude loss caused by the backing up of water through sewers or drains even though this water overflows from within the plumbing system in the plaintiff's home.

The Court is much in sympathy with the plaintiff in this case. Her loss is substantial and she, like so many insureds, probably did not comprehend the extent of the coverage under the policy nor could she reasonably foresee the events resulting in her loss. However, neither prejudice nor sympathy has any place in determining the rights of the parties.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties and subject matter of this controversy.

2. The plaintiff has failed to show from the evidence that the damage to her property was caused by an explosion within the meaning of the policy of insurance.

3. The overflow of water and sewage from within the plumbing system of the plaintiff's home was caused by water backing up through the sewers of the Town of Robbins and such loss is specifically excluded by provision (b) (2) of the "Special Exclusions."

4. The motion of the defendant to dismiss should be allowed for the reason that upon the facts and law the plaintiff has shown no right to relief.

5. Each party should bear its own cost.