659 So.2d 310 (1994)
FLORIDA FARM BUREAU INSURANCE COMPANY, Appellant,
v.
J. Timothy BIRGE and Margaret Birge, Appellees.
No. 93-03737.
District Court of Appeal of Florida, Second District.
December 28, 1994.
George A. Vaka of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellant.
C. Kenneth Stuart, Jr., Lakeland, for appellee.
PER CURIAM.
Florida Farm Bureau Insurance Company appeals a $100,000 final judgment entered in favor of the Birges. We affirm because we agree the homeowners' insurance contract did not unambiguously exclude from coverage *311 damage to the Birges' home caused by a sewer malfunction.
On July 11, 1991, J. Timothy and Margaret Birge returned home, opened the front door, and were met by raw sewage filling their house and flowing out the doorway. The Birges filed an insurance claim for the damage. Farm Bureau denied coverage based on two provisions in the insurance contract that excluded damage resulting from "water" or from "pollutants and contaminants."
The trial judge found the insurance contract was ambiguous and allowed the jury to determine the damages. If the language of an insurance contract is ambiguous, the policy must be construed in favor of the insured. State Farm Mut. Auto. Ins. Co. v. Pridgen, 498 So.2d 1245 (Fla. 1986); Hartnett v. Southern Ins. Co., 181 So.2d 524 (Fla. 1965); Shelby Mut. Ins. Co. v. Lamarche, 371 So.2d 198 (Fla. 2d DCA 1979), approved, 390 So.2d 325 (Fla. 1980). Exclusionary clauses are construed more strictly than coverage clauses. Triano v. State Farm Mut. Auto. Ins. Co., 565 So.2d 748 (Fla. 3d DCA 1990).
We agree with the trial judge that the policy was ambiguous. The average homeowner's examination of the insurance contract would not reveal the applicability of these exclusions to this type of disaster. Our conclusion is supported by the availability of clear and unambiguous language that the insurance company could have used to exclude damage resulting from a backup of raw sewage.
Accordingly, we affirm.
BLUE and FULMER, JJ., concur.
PARKER, A.C.J., dissents with opinion.
PARKER, Acting Chief Judge, dissenting.
Because I conclude that the trial court erred in denying Farm Bureau's motion for directed verdict, I respectfully dissent. Accordingly, I would reverse the $100,000 judgment in favor of the Birges and remand for entry of directed verdict in favor of Farm Bureau.
This case arises from Farm Bureau's denial of the Birges' claim for homeowner's insurance coverage. The Birges filed a homeowner's insurance coverage claim for damage caused to their home as a result of sewage backup from a nearby sewage station. Farm Bureau denied coverage contending that the loss was excluded by either the pollution clause or the water damage exclusion in the policy. The Birges filed suit against Farm Bureau, and the case proceeded to trial.
The material facts presented at trial were undisputed. Lightning struck a transformer causing a power failure at the City of Eagle Lake pump station. As a result of the electrical failure, Eagle Lake's electrical generating pumps could not operate and sewage which had collected in the main well began to fill up to the point where it backed up into residences along the line. The Birges' residence was at the end of the sewer line and gravity caused the raw sewage to back up from outside the Birges' property into their residence. Mr. Birge came home from work to discover that water and raw sewage effluent was flowing from all of the toilets and bath drains in all three of his bathrooms. The entire residence contained two to three inches of flowing sewage. For the fifteen months the Birges had lived in the home, there had never been a problem with the sewer system.
At the close of the evidence, Farm Bureau moved for a directed verdict on the basis that raw sewage is a contaminant or pollutant and the damage was excluded from coverage. Farm Bureau also argued that it was undisputed that the damage to the Birges' home was caused by water and something else, whether it be untreated sewage, effluent, or whatever. Farm Bureau argued that unless the trial court ruled that the policy was ambiguous, as long as water contributed to the damage, the entire damage was excluded.
The trial court denied Farm Bureau's motion for directed verdict and allowed the case to be submitted to the jury for determination without expressly ruling that the policy was ambiguous. The jury returned a verdict in favor of the Birges, and Farm Bureau appealed.
*312 On appeal, Farm Bureau argues that the trial court erred as a matter of law in denying its motion for directed verdict on the question of coverage. Farm Bureau contends that two provisions in the policy preclude coverage in this case. The first clause to which Farm Bureau points is the pollution clause in the policy which does not provide coverage for loss to property caused by the release, discharge, or dispersal of pollutants. The second provision Farm Bureau argues precludes coverage is the water damage exclusion which excludes coverage for loss caused directly or indirectly by water damage.
The policy issued by Farm Bureau was a Homeowners 3 Special Form Policy which provided both property coverage and liability insurance. The policy stated in part:
COVERAGE A  DWELLING and COVERAGE B  OTHER STRUCTURES
We insure against risks of direct loss to property described in Coverages A and B only if that loss is a physical loss to property; however, we do not insure loss:
2. caused by:
f. (5) release, discharge or dispersal of contaminants or pollutants;
if any of these cause water damage not otherwise excluded, from a plumbing, heating, air conditioning or automatic fire protective sprinkler system or household appliance, we cover loss caused by the water including the cost of tearing out and replacing any part of a building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which this water escaped.
(Referred to as the pollution clause).
The policy also contained the following pertinent exclusion which provides as follows:
1. We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.
c. Water Damage, meaning:
(2) water, which backs up through sewers or drains or which overflows from a sump; ...
(Referred to as the water damage exclusion).
Farm Bureau correctly argues that the question of the extent of coverage is generally a question of law for the court. See Jones v. Utica Mut. Ins. Co., 463 So.2d 1153 (Fla. 1985); Marr Investments, Inc. v. Greco, 621 So.2d 447 (Fla. 4th DCA 1993). If the language of a policy is ambiguous, the policy must be construed to provide coverage. Old Dominion Ins. Co. v. Elysee, Inc., 601 So.2d 1243 (Fla. 1st DCA 1992). However, where language in a policy is plain and unambiguous, there is no special construction or interpretation required, and the plain language in the contract is to be given the meaning which it clearly expresses. Jefferson Ins. Co. of New York v. Sea World of Florida, Inc., 586 So.2d 95 (Fla. 5th DCA 1991); United States Liability Ins. Co. v. Bove, 347 So.2d 678 (Fla. 3d DCA 1977). The mere fact that the policy does not provide definitions of certain terms does not render the terms ambiguous. Jefferson Ins. Co.; Travelers Ins. Co. v. C.J. Gayfer's & Co., Inc., 366 So.2d 1199 (Fla. 1st DCA 1979). When construing the policy, every provision in an insurance contract should be given meaning and effect, and any apparent inconsistency should be reconciled if possible. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla. 1979). Insurance contracts are to receive a reasonable, practical, and sensible interpretation which is consistent with the intent of the parties and not a strained, forced, or unrealistic interpretation. Weldon v. All American Life Ins. Co., 605 So.2d 911 (Fla. 2d DCA 1992); American Manufacturers Mut. Ins. Co. v. Horn, 353 So.2d 565 (Fla. 3d DCA 1977), cert. denied, 366 So.2d 885 (Fla. 1978).
Applying these principles to this case, I conclude that the pollution clause in the policy unambiguously excludes coverage for the damage to the Birges' property. Further, I conclude that when both clauses are considered together, they are consistent.
The pollution exclusion clause at issue in this case states that the policy does not insure loss caused by "release, discharge or *313 dispersal of contaminants or pollutants." Webster's Third New International Dictionary, Unabridged, 1756 (1986) defines the terms "pollutant" and "pollute" as follows:
Pollutant: something that pollutes: a polluting substance, medium, or agent Pollution Problem> .
Pollute 2: to make physically impure or unclean: BEFOUL, DIRTY, TAINT .
Webster's Third New International Dictionary, Unabridged, 491 (1986) defines the terms "contaminant" and "contaminate" as follows:
Contaminant: something that contaminates.
Contaminate 2: to render unfit for use by the introduction of unwholesome or undesirable elements .
The Birges' amended complaint alleged that the damage to the house was caused by "raw sewage." Farm Bureau, in its amended answer, admitted that the house was damaged by "raw sewage." Mr. Birge testified at trial that when he returned home from work on the day of the occurrence, "water and sewage was flowing throughout the house." The City Public Works Director testified that he saw "sewer water" in the yard and flowing out of the carport; the vast majority of "sewer water" was in fact water but also had solids; the home was soaked with "sewage"; and what backed up clearly contained water. The City Manager testified that she called Service Master, a cleaning service, to remove "wastewater from the house." She stated that it was important for the clean-up to begin as soon as possible because "sewage" was a "contaminant." Mr. Holm, a representative of Service Master, testified that he observed several inches of water and "raw sewage" throughout the entire home. He also explained his efforts in "disinfecting" the home. A letter from a representative of the Department of Health and Rehabilitative Services, entered into evidence at trial, stated that the presence of "raw sewage" is evidence of a sanitary nuisance as defined by section 386, Florida Statutes. The letter further stated that this condition is capable of transmitting disease in man which means that the house is in an unsanitary condition and therefore unsafe and unfit for human habitation.
Although the pollution clause here does not define the terms "pollutant" or "contaminant," I conclude that it is not ambiguous. The common, ordinary understanding of those terms as evidenced by the dictionary definition and the witnesses' testimony is that "sewage" is a "pollutant" and "contaminant." See Old Dominion Ins. Co. Thus, in my view, those terms were not subject to differing interpretations in this case, and Farm Bureau was entitled to a motion for directed verdict on the basis that the pollution exclusion clause alone precluded coverage.
The trial court relied upon Sterling v. City of West Palm Beach, 595 So.2d 284 (Fla. 4th DCA 1992), in denying Farm Bureau's motion for directed verdict. In Sterling, ficus tree roots growing into sewer lines located outside of the homeowner's property caused raw sewage to back up through the toilets and bathtubs in the house located on the property. The homeowner's insurance policy in Sterling also contained an exclusion for "water damage" caused by water which backs up through "sewers or drains." The insured in Sterling argued to the trial court that raw, untreated sewage which caused the damage to his home was not water under any definition. Based on that exclusion, the trial court granted summary judgment in favor of the insurer. On appeal, the insured argued that there was a substantial issue of material fact as to whether sewage is water under the circumstances of the policy at issue. The Fourth District agreed and reversed on that basis. In reversing the final summary judgment for the insurance company, the Fourth District stated:
A further issue to be resolved on remand is the determination of the intention of the parties to the policy. There is no mention in the policy of any exclusions for damage caused by raw sewage. If the parties intended that such damages be excluded, *314 then some findings need to be made which reflect this intention. We remind the trial court that if there are any ambiguities in the policy or if the policy is subject to two or more constructions, then the construction permitting recovery is to be given effect. Insurance policies, and exclusions in particular, are to be construed strictly against the insurer.
Sterling, 595 So.2d at 285 (citations omitted).
I conclude that Sterling is distinguishable from this case. The court, in Sterling, addressed a clause similar to the water damage clause in this case which excludes water damage which backs up through "sewers or drains." However, the policy in Sterling did not contain a pollution exclusion clause such as the one at issue in this case which excludes damage caused by a pollutant or contaminant. Thus, even if one concluded that the argument and rationale in Sterling that "raw sewage" is not "water" are applicable to the water damage clause at issue here, it does not help the Birges escape the exclusion under the pollution clause because the unrefuted testimony was that raw sewage is a contaminant.
Farm Bureau also argues that even if the pollution clause is determined to be ambiguous, loss for the damage is excluded by the water damage clause. Farm Bureau further argues that when the water damage clause and the pollution clause are read together, the clauses are consistent and the policy is, therefore, not ambiguous. I agree.
Farm Bureau concedes, as it did at trial, that the exception to the pollution clause would allow coverage for water damage caused by backup from the plumbing system, a plumbing fixture, or an appliance, such as a dishwasher with a clogged drain. Farm Bureau contends, however, that the damage to this house was caused by backup from a sewage system outside the premises and falls squarely under the water damage exclusion. Farm Bureau's contention is based on the distinction between a backup from a plumbing system as opposed to backup from a sewer system.
Webster's Third New International Dictionary, Unabridged, 2081 (1986), defines sewage and sewer as follows:
Sewage  The contents of a sewer or household drain: refuse liquids or waste matter carried off by sewers.
Sewer  1: A ditch or surface drain 2: an artificial usu. subterranean conduit to carry off water and waste matter (as surface water from rainfall, household waste from sinks or baths, or waste water from industrial works).
Farm Bureau relies on a number of cases which have considered similar policy provisions to support its position. In Old Dominion Insurance Co., the First District recognized the distinction between damage caused by a blockage within the plumbing system and damage resulting from a backup in the sewer system. In that case, the insurance policy contained a water damage provision which excluded from coverage "water that backs up from a sewer or drain." There, a blockage caused sewage from a main line to back up into a store located in a shopping mall. The store owner made a claim for damages, and the insurer denied coverage. The trial court granted a partial summary judgment for the store owner. Based on the water damage exclusion, the First District found there was no coverage under the policy and reversed and directed entry of summary judgment for the insurance company. The First District stated:
There is no dispute between the parties concerning where the blockage occurred or the function of the pipe where the blockage occurred  the blockage was off appellee's premises in a main drain pipe that serviced the entire mall, at a point before sewage entered the city's sewage system. The only dispute concerns what is meant by the words "sewer" or "drain" utilized in appellant's insurance policy. These words are not defined in the policy.
... .
The common understanding of the words "sewer" and "drain" is that they describe devices which carry water and sewage away from property. It is also understood that a plumbing blockage which contains waste from another premises must be a backup from a "sewer" or "drain." Webster's New World Dictionary, Third College *315 Edition (1988) defines the words as follows:
Sewer  a pipe or drain usually underground, used to carry off water and waste matter.
Drain  channel or pipe for carrying off water, sewage, etc.
... We do not find that the lack of specific coverage language in the policy here causes the language in the exclusion to be ambiguous. In addition, the only testimony presented by either party, that of the plumber who attended the problem, included his opinion that the sewer began at the property line.
Old Dominion Ins. Co., 601 So.2d at 1245 (emphasis in original).
The court in Haines v. United Security Insurance Co., 43 Colo. App. 276, 602 P.2d 901 (1979), came to the same conclusion. There, water from heavy rainfall entered a sewer line and caused sewage to be discharged into the insured's basement. The policy in Haines covered loss due to "[a]ccidental discharge or overflow of water ... from within a plumbing system." The policy also contained an exclusion for loss "caused by, resulting from, contributed to or aggravated by ... water which backs up through sewers or drains." The insured argued that those two provisions created an ambiguity in the policy. Citing Hallsted v. Blue Mountain Convalescent Center, Inc., 23 Wash. App. 349, 595 P.2d 574 (1979), the court found that when the two clauses are read together, they are consistent and there is no ambiguity. The court interpreted the clauses to mean that if the cause of the discharge is in the insured's system; i.e., a clogged sink drain which causes water in the plumbing system to overflow, the exclusion does not apply. If the cause of the discharge is outside that system; i.e., a clogged sewer pipe, the exclusion is applicable even though the water flows through the plumbing system.
In Hallsted, the policy contained essentially the same clauses as those at issue in Haines. The sewer under the street in front of the insured's home became clogged and caused sewage to back up through the sewer pipes and to flow through the insured's plumbing system and out of the insured's toilet. The court, in Hallsted, rejected the insured's argument that the policy is ambiguous. See also Jackson v. American Mut. Fire Ins. Co., 299 F. Supp. 151 (M.D.N.C. 1968), aff'd, 410 F.2d 395 (4th Cir.1969).
Finally, in Rodin v. State Farm Fire & Casualty Co., 844 S.W.2d 537 (Mo. Ct. App. 1992), the court came to the same conclusion. There, roots in the sewer system caused sewage to back up into the insured's residence. The insured described the effluent that entered his basement as an odorous, viscous, black liquid with solid matter floating in it. The insured stated that the liquid was definitely not water. The insurance policy at issue in Rodin contained an exclusion which provided:
We do not insure for loss which would not have occurred in the absence of one or more of the following events. We do not insure for such loss regardless of: a) the cause of the excluded event; or b) other causes of the loss; or c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss.
... .
c. Water damage, meaning:
(2) Water which backs up through sewers or drains.
The court concluded that the policy excluded coverage for damage from sewage backup that would not have occurred in absence of water damage, whether the loss was caused by pure water or by pollutants in sewage.
Based on these authorities, I conclude that the trial court erred in denying Farm Bureau's motion for directed verdict. I would find that the pollution clause unambiguously excludes damage caused by raw sewage which is commonly understood to be a pollutant or contaminant. Sterling is inapplicable here because the policy in Sterling did not contain a pollution exclusion clause. Regarding the water damage clause, I would adopt the reasoning in Old Dominion Insurance Co. I would find that when the two clauses are read together, the insurance policy is unambiguous as it relates to damage from a sewer backup whether it discharges water or water and sewage into the home. To the *316 extent that my conclusions disagree with Sterling as it relates to the water damage clause, I would certify conflict.