[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
February 19, 2003
THOMAS K. KAHN
CLERK

_____

No. 01-10331

_____

D.C. Docket No. 00-01169-CV-FAM


ADMIRAL INSURANCE COMPANY,

Plaintiff-Counter-Defendant.

versus


FEIT MANAGEMENT COMPANY,
TERRA COTTA PLACE APARTMENTS, INC.,
a Florida corporation, et al.,

Defendants-Appellees,

TWIN CITY FIRE INSURANCE,
NATIONAL SURETY CORPORATION,
RELIANCE NATIONAL INSURANCE COMPANY,

Defendants-Appellants.


_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(February 19, 2003**

Before CARNES, HILL and FARRIS[*], Circuit Judges.

HILL, Circuit Judge:

Insurance companies filed a declaratory judgment action, under our diversity jurisdiction, seeking a determination as to the applicability of the pollution exclusion clause and the exception to it found in various insurance contracts.  The district court found coverage, and the insurers appealed.

## I.

In January of 2000, carbon monoxide fumes, from an improperly vented water heater in an apartment complex, flowed into the attic space and then through the HVAC (heating, ventilating and air conditioning) system of the apartments, and finally into the individual apartments.  The fumes caused death and serious injury to a number of residents.

Admiral Insurance Company ("Admiral") issued an insurance policy to Feit Management Company ("Feit"), which manages the apartments for Terra Cotta Place Apartments, Inc., the owner of the apartment complex.[1]

---

[*] Honorable Jerome Farris, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1]The Admiral insurance policy has a liability limit of $2,000,000.  The other plaintiffs, Twin City Fire Insurance Company, National Surety Corporation, and Reliance National Insurance Company, are excess carriers.

The Admiral Commercial General Liability Coverage Form, which it issued to Feit, provides indemnity for bodily injury or property damage for which the insured is liable, unless it is specifically excluded under the policy. One such exclusion contained in the insurance contract provides that the policy does not cover bodily injury or property damage arising out of the "discharge, dispersal, seepage, migration, release or escape of pollutants." The policy, however, excepts from this exclusion any "injury or damage sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building."

There is no dispute that, absent the exception, the pollution exclusion clause would exclude coverage for the injuries at issue in this case. Feit, and the third-party beneficiaries under the policy, however, claim that the exception does apply. They contend that the carbon monoxide fumes entered the apartments from "equipment used to heat that building" because the fumes came *from* (meaning "through" or "by way of") each apartment's air handler, which is part of the heating (and cooling) system of the apartments.

Admiral, on the other hand, contends that the exception does not apply because it is undisputed that the toxic fumes came *from* (meaning originating in)

3

the hot water heater, which all agree is not part of the "equipment used to heat that building."

The district court granted judgment to Feit. The court held that since both meanings of "from" were reasonable, the word, as used in the policy, was ambiguous, and should be construed in favor of coverage.

The issue, then, is simple. What does "from" mean in the context of this insurance policy. Did the fumes come *from* equipment used to heat the building?

## II.

The interpretation of an insurance contract is a matter of law subject to *de novo* review. *Technical Coating Applicators, Inc. v. United States Fid. and Guar. Co.*, 157 F. 3d 843, 844 (11th Cir. 1998). Sitting in diversity, we apply the substantive law of the forum state unless federal constitutional or statutory law compels a contrary result. *Id.* The rulings of the highest court of the forum state control our decision. *Id.*

The Florida Supreme Court has recently settled the law of Florida on the interpretation of pollution exclusion clauses in contracts of insurance. *Deni Associates, Inc. v. State Farm Fire & Cas. Ins. Co.*, 711 So. 2d 1135 (Fla. 1998). In reviewing a pollution exclusion virtually identical to the one at issue in this

4

case, the court acknowledged that, under Florida law, if the language of the exclusion is ambiguous, it must be interpreted to provide coverage. *Id.* at 1138 (citing *State Farm Mut. Auto. Ins. Co. v. Pridgen*, 498 So. 2d 1245, 1248 (Fla. 1986)). Nevertheless, the court noted, this rule applies only when a "genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of [contract] construction." *Id.* (quoting *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So. 2d 938, 942 (Fla. 1979)). Where the language in the policy is plain and unambiguous, however, the court concluded that no special construction or interpretation is required or even appropriate,[2] and the plain language of the policy will be given the meaning it clearly expresses. *Id.* at 1139-40. *See also Florida Farm Bureau Ins. Co. v. Birge,* 659 So. 2d 310, 312 (Fla. 2d DCA 1994).

Upon review of the pollution exclusion clause language, the Florida Supreme Court held that it was "clear and unambiguous," and that in view of this clarity, it could not "rewrite" the contract to "reach results contrary to the intentions of the parties." *Id.* at 1238 (quoting *Excelsior Insurance*, 369 So.2d at

_____

[2]The court rejected, for example, resort to the history of such clauses, a strategy also employed here.

5

942). We, too, have recognized Florida's unequivocal rule on the enforceability of such "absolute pollution exclusions" on more than one occasion. *Technical Coating,* 157 F. 3d at 844; *West American Ins. Co. v. Band & Desenberg*, 138 F.3d 1428 (11th Cir. 1998).

At issue in this case is an exception to a pollution exclusion clause, which, if it applies, resurrects coverage. Although the *Deni* court did not have such an exception before it, we are mindful that the rules of construction articulated there apply to this exception as well. It, too, must be given its plain meaning unless there is some genuine ambiguity in the exception's meaning.

Feit contends, first, that the exception for fumes that come "from equipment used to heat the building" plainly applies here because the fumes came into the individual apartments *from the air handlers*, which is part of the building's heating (and cooling) system.[3] Under this interpretation of the exception, "from" means "through" or "by way of." Since there is no dispute that the fumes came *through* the air handlers into the apartments, Feit concludes that the exception applies.

_____

[3]We assume *arguendo* that the air handler is part of the heating system, as contemplated by the policy.

However appealing this argument might be, we must decline to accept it. We have no doubt that the language of the policy's pollution exclusion exception, given its ordinary and plain meaning, intends to resurrect coverage for injuries caused by pollutants "originating" in or "produced" by the building's heating equipment.[4] Even Feit recognized at oral argument that had the carbon monoxide fumes entered the apartments through their front doors, we would not say that the fumes came "from" the door. In answer to the question, "Where did those fumes come from?" we would respond, "The hot water heater."

We find support for this conclusion in the language of the pollution exclusion combined with the exception. The policy excludes coverage for injuries or property damage arising out of the "discharge, dispersal, seepage, migration, release or escape of pollutants," unless these pollutants are from equipment used to heat the building. Since the pollutants in this case were discharged, dispersed, released or escaped from the hot water heater, which all agree is not used to heat the building, the exception does not apply and coverage is excluded for the resulting injuries.

---

[4] *Webster's Third Collegiate Dictionary* defines "from" as "a point of departure" or a "source" or a "beginning."

Furthermore, the language of the exception, itself, makes clear that it intends to provide coverage only for fumes and vapors that originate in the equipment used to heat the building, and not all fumes, whatever the source.[5] If toxic fumes escaping from anywhere – not just the building's heating equipment – were covered so long as they somehow make their way into a building's heating and air conditioning ducts, then virtually all incidents involving fumes and vapors would be covered since it would be the rare case in which such pollutants did not make their way into the building's ventilation system. To interpret the exception in this way would cause it to virtually swallow up the pollution exclusion itself.

Feit next argues that even if the fumes *originated* in the hot water heater, they also came *through* the air handlers into the apartments. Thus, the fumes came both *from* the hot water heater and *from* the air handlers. Since "from" can be used in both senses, Feit contends, the word is ambiguous and this court is obligated, under Florida law, to construe it in a way that provides coverage.

We must disagree again. The Florida Supreme Court reiterated in *Deni* that the "mere failure to provide a definition for a term involving coverage does not

[5]This makes sense because heating equipment generally incorporates a flame or other component capable of generating toxic fumes, a predictable risk against which the insurer can charge a premium to indemnify the insured.

8

necessarily render the term ambiguous." *Id*. at 1139 (quoting *Jefferson Ins. Co. v. Sea World, Inc.*, 586 So. 2d 95, 97 (Fla. 5th DCA 1991). "The drafter of a policy need not define each word in the policy *ad infinitum . . . .*" *Id.* (quoting *Titan Holdings Syndicate, Inc. v. City of Keene, N.H.*, 898 F.2d 265, 269 (1st Cir. 1990). We, too, have so held. *Gulf Tampa Drydock Co. v. Great Atl. Ins. Co.*, 757 F.2d 1172 (11th Cir. 1985) (failure to define every term does not create ambiguity *per se*).

In the absence of a definition, "from" is to be given its plain and ordinary meaning. As we have concluded above, "from" in the context of this exception clearly means "originating in." Merely because it could mean something else, does not mean that it does in the context of these insurance policies.

## III.

The injuries for which the insured and third-party beneficiaries seek coverage were caused by toxic fumes that came from the hot water heater at the apartments. As such, they were excluded from coverage by the policy's pollution exclusion clause, and were not resurrected by the exception which provides coverage for pollutants which come from the equipment used to heat the building.

Accordingly, the judgments of the district court are reversed and the case is remanded with instructions to enter judgment for the plaintiffs.[6]

REVERSED and REMANDED.

---

[6]Feit's "Suggestion of Mootness," construed as a motion to dismiss, is denied. All other pending motions are denied as moot.